LEONIDAS PARENTEAU *vs.* BRUNO PARENTEAU.

LEONIDAS PARENTEAU *vs.* SAME.

PHILIPPE THEROUX *vs.* SAME.

AMANDA PARENTEAU *vs.* SAME.

MARCH 11, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

MURDOCK, J.   These four actions of trespass on the case for negligence arose out of an accident which occurred on July 13, 1928, in the town of Warwick.   The cases were tried together and resulted in a verdict in each case for the defendant.   The plaintiffs' motions for new trials having been denied the cases are in this court on plaintiffs' exceptions, (1) to rulings on the admission of evidence; (2) to the refusal of the trial justice to charge the jury as requested; (3) to the refusal of the trial justice to grant new trials.

The defendant is the owner of an automobile of the brougham type which he was driving late at night from Oakland Beach in the town of Warwick to his home in Woonsocket.   With him in his car by his invitation were his wife, his brother, the plaintiff Leonidas Parenteau, the latter's wife, the plaintiff Amanda Parenteau, and his brother-in-law, the plaintiff Philippe Theroux who sat on the front seat with the defendant.   The night was stormy and it was raining at the time of the accident.   On the outskirts of the village of Conimicut the automobile ran into a tree and all of its occupants were injured.   West Shore road, along which the defendant was driving his car, is what is called a tar macadam road, the traveled part of which is twenty-four feet in width.   There was a shoulder on this road, between two and a half to three feet in width, constructed of sand and gravel, oiled and rolled and in condition for travel.   There was no regularly built sidewalk with curbing paralleling the road but there was a path for pedestrians.

The tree with which the automobile of the defendant collided was between this path and the tar macadam roadway. This tree was 15 inches in diameter, its center was 3.4 feet from the edge of the tar macadam and the side of the tree nearest the tar macadam was 2.8 feet therefrom. If the shoulder be taken as 'three feet in width a part of the tree was within its limits and if its width be taken as 2.5 feet, one side of the tree was less than four inches from its outer edge. A photograph taken shortly after the accident and admitted as an exhibit shows what appears to be a bend in the outer edge of the shoulder near the base of the tree, indicating a narrowing of the shoulder at this point. There was testimony that the oiled shoulder extended to the base of the tree.

About fifty feet beyond this tree a street called Birchwood avenue leads into the West Shore road from the west. The defendant testified that when about two hundred or two hundred fifty feet away he saw the lights of an automobile coming out of Birchwood avenue. The plaintiffs Theroux and Leonidas Parenteau testified that this distance was about one hundred fifty feet. This automobile turned to the south and thus faced the defendant. There is a conflict of testimony as to whether the automobile which entered West Shore road to the left of the defendant crossed far enough to encroach upon defendant's side of the road. It is undisputed that the defendant was momentarily blinded by the lights of this car and turned his own car to the right onto the shoulder of the road and first saw the tree with which he collided when about fifteen or twenty feet therefrom. He immediately applied his brakes but could not stop his car in time to avert the collision.

On cross-examination, the defendant was asked: "Now I repeat the question: What did your wife say to you about the speed that you were going, or about being careful?" This question was excluded as being in conflict with Section 39 of Chapter 342, G. L., 1923, which makes any communication between husband and wife, during their marriage,

with certain exceptions, incompetent. The defendant had already testified that his wife warned him not to drive too fast and the plaintiff Theroux also testified to the same effect and told what the defendant said in reply to his wife's warning. If it was error to exclude the above question, and we express no opinion thereon, it was harmless error as the answer in another form was already before the jury. The defendant's exception to the exclusion of this testimony is therefore overruled. *Hargraves* v. *Ballou*, 47 R. I. 186.

At the trial there was admitted in evidence a paper, signed by the plaintiffs Leonidas Parenteau and Amanda Parenteau, which contained statements as to the accident in some particulars inconsistent with the claim of these plaintiffs and thus was admissible as an admission against interest. As to the contention that owing to their lack of knowledge of the English language they did not know what the paper contained, this was a question for the jury who had the opportunity of seeing and hearing the witnesses and so were in a position to judge as to their knowledge of the contents of the paper which they admittedly signed. The exception to the admission of the document is overruled.

The trial justice charged the jury fully and correctly as to the law relating to these cases. Parties are not entitled to have a charge to the jury in their own language. *Weisman* v. *Stone* (R. I.), 140 Atl. 912; *Revens* v. *Berth* (R. I.), 147 Atl. 751; *McGarrity* v. *N. Y., N. H. & H. R. R. Co.*, 25 R. I. 269; *McGowan* v. *Court of Probate of Newport*, 27 R. I. 394; *Blake* v. *R. I. Co.*, 32 R. I. 213. It is sufficient if the substance of the request is included in the judge's charge. The exception to the refusal to charge as requested is overruled.

It is the contention of the plaintiffs that the defendant was driving at a negligent, if not reckless, speed under the conditions and that when blinded by the lights of the approaching car he should have slowed down so as to have been able to stop his car before hitting the tree. There is a conflict of evidence as to the speed at which the defendant was proceeding. The plaintiff Theroux testified that short-

ly before the accident he cautioned the defendant about driving so fast and that the defendant's wife did the same. All of the testimony as to the speed of the car is based on an estimate as none of the witnesses observed the speed as indicated by the speedometer. From the evidence the jury could have found that the speed of the car was from twenty-five to forty miles an hour. A police officer, who saw the defendant's car about one thousand feet south of the place of the accident, testified "the machine was going along not at a great rate of speed." He estimated the speed to be about thirty-five miles. William Palmer, who was walking south along the path and was a witness to the accident, testified that the defendant wasn't going very fast but made no estimate of the miles per hour. The speed at which the defendant's car was driven and to what extent speed was a factor in contributing to the accident were questions for the jury.

Did the defendant fail to do what a reasonably prudent man would have done when he saw the car entering West Shore road from Birchwood avenue? The evidence is con-flicting as to how far this car encroached on the defendant's side of the road. There is evidence from which the jury could have found that it went far enough to have caused the defendant to be reasonably apprehensive of a collision unless he turned his own car to the right. The defendant says that the other car made a wide turn and that he turned his own car a little to the right so he could see the end of the road where the black road stopped, obviously meaning the outer edge of the shoulder. On this phase of the case the trial justice says in his rescript, "The Court can not say that Parenteau failed to act as a reasonably prudent man would do under like circumstances when he swerved to his right to avoid a machine that appeared to be coming in his path."

The distance between the point where the defendant turned to his right and the tree is an important factor in these cases. There is no direct evidence on this point. Birchwood avenue is about fifty feet north of the tree. It

naturally took some time for the automobile coming out of said avenue to turn south, especially if it made a wide turn. The trial justice says, "The space between the point where Parenteau swerved to his right and the place where the tree stood was evidently very short." The plaintiff Philippe Theroux graphically described the situation as follows: "I see when the light make blind he turned the wheels, drive on the right a little bit, you know, and he go right straight, and the first thing, you know, the tree."

Was the defendant guilty as a matter of law when, blinded by the headlights of the approaching car, he did not reduce the speed of his car to a degree that would have enabled him to have brought it to a stop before hitting the tree? The defendant says that he took his foot off the accelerator; that the other car when it turned to the right made his road clear but he was then so near to the tree that he could not stop. Under certain conditions it would doubtless be the duty of a driver of an automobile when blinded by dazzling lights to have his car under such control that he would be able to bring it to an immediate stop. *Hammond* v. *Morrison*, 90 N. J. L. 15; *Cole* v. *Wilson*, 127 Me. 316; *House* v. *Ryder* (Me.) 150 Atl. 487; *Peasley* v. *White* (Me.) 152 Atl. 530.

The presence of blinding lights is only one of the factors to be weighed by the jury along with other circumstances bearing on the general question of negligence. Ordinarily the question of negligence on the part of the driver of an automobile is a question of fact to be determined by the jury under proper instructions as to the commonly accepted standards of due care. The case must be very clear to warrant the court in holding the driver of an automobile to be negligent as a matter of law. *Frowd* v. *Marchbank*, 154 Wash. 634; *Aubin* v. *Duluth Street Railway Co.*, 169 Minn. 342; *Denver Alfalfa Milling & Products Co.* v. *Erickson*, 77 Colo. 583; *Turpie* v. *Oliver*, 21 Alberta L. R. 508.

In the instant case the defendant was driving late at night on a road on which there was not much traffic. When

he turned to the right to avoid possible danger of collision with the car entering West Shore road he did not turn far enough to go beyond the shoulder of the road nor did he continue to drive on said shoulder for any considerable distance. There is no evidence that he knew or should have known of the presence of the tree so near to the shoulder of the road and we cannot say as a matter of law that he was guilty of negligence in proceeding at a reasonable rate of speed under the conditions. It is a matter of common experience that drivers of automobiles at night have their vision temporarily obscured by the headlights of approaching cars. To hold that when temporarily blinded by headlights it is always the duty of the driver of an automobile to stop or to so reduce his speed as to be able to stop instantly would make driving at night on roads where there is any considerable traffic extremely difficult if not impossible. Other traffic conditions permitting, the driver of an automobile whose vision may be temporarily obscured by headlights of an approaching car may pass such car at a reasonable rate of speed without being negligent as a matter of law.

In support of their motions for new trials the plaintiffs filed affidavits of newly discovered evidence. These affidavits related to the condition of defendant's car after the accident. The purpose of this evidence was to show the severity of the impact of the car with the tree as bearing upon the question of the speed of defendant's car. This evidence is merely cumulative and there appears no reason why it could not have been obtained by due diligence before the trial and it was not error to refuse a new trial on this ground.

As is evident from his rescript, the trial justice gave plaintiffs' motions for new trials careful consideration and as we cannot say that he was clearly wrong plaintiffs' exceptions to his refusal to grant new trials must, under our well established rule, be overruled.

In each case all of the plaintiffs' exceptions are overruled and each case is remitted to the Superior Court for the entry of judgment on the verdict.

SWEENEY, J., dissenting. I am obliged to dissent from the foregoing opinion because after careful reading and consideration of the evidence I am convinced that the verdicts for the defendant are against the overwhelming preponderance of the evidence and that the trial justice clearly erred in not granting plaintiffs' motions for new trials on this ground.

In these cases there is no question of the contributory negligence of any of the plaintiffs. The sole question is that of the negligence of the defendant.

Plaintiffs were riding as guests in an automobile driven by defendant over the West Shore road, one of the main highways in the town of Warwick. The road bed was tar macadam, twenty-four feet wide, with gravel shoulders. Defendant drove his automobile so far off the macadam road that his automobile ran into a large tree which was 2.8 feet from the edge of the macadam. As a result of the collision one of the occupants of the automobile received a broken leg and another a broken arm, and all of them were seriously injured.

Defendant testified that he was driving his automobile between thirty and forty miles an hour just before the accident; that as he approached the place of the accident he saw an automobile coming out of a street on his left, about two hundred and fifty feet ahead of him, and turn towards him; that as this automobile made the turn its lights flashed on his windshield and then it turned to its right and left his way clear; that the lights on the approaching automobile blinded him as it turned and that he turned his automobile to the right to pass and struck the tree. Defendant also testified that he did not see the tree until he was fifteen to twenty feet from it when he tried to stop his automobile by applying the brakes.

Defendant should have seen the tree before he was within such a short distance of it. He testified that there was no steam or fog and that he could see clearly. The lights on his automobile should have projected sufficient light ahead

so as to render clearly discernible all substantial objects within the area of at least two hundred feet in front of his automobile. Chap. 1195, P. L. 1928.

What did the law require the defendant to do under the facts and circumstances of this case? The majority opinion cites three cases from the Supreme Court of Maine and one case from the Court of New Jersey to the effect that under certain conditions it would doubtless be the duty of the driver of an automobile, when blinded by dazzling lights, to have his car under such control that he would be able to bring it to an immediate stop. One of the cases cited—*Peasley* v. *White*, (Me.) 152 A. 530,—was that of a guest against the driver of an automobile in which the jury returned a verdict for the defendant. The court held that the evidence showed that the defendant was negligent and that the finding of the jury was either the result of a misconception of the law and the facts of the case or a bias or prejudice upon which no just verdict could stand and ordered a new trial. In another of the cases cited, *Cole* v. *Wilson*, (Me.) 143 A. 178, the court held that, if the operator of an automobile is blinded by a light from another automobile so that he is unable to distinguish an object in front, reasonable care requires that he bring his vehicle to a stop and failure to do so justified a charge of negligence. The court cited cases from six states in support of this principle. Another case cited is that of *House* v. *Ryder*, (Me.) 150 A. 487, in which the court said: "No man is entitled to operate an automobile through a public street blindfolded. When his vision is temporarily destroyed by a glaring light, it is his duty to stop his car." This statement of the duty of the driver of the automobile is the same as that made by the court of New Jersey in the cases of *Osbun* v. *De Young*, 122 A. 809; *Hammond* v. *Morrison*, 100 A. 154. *Howard* v. *Reid*, 233 N. Y. S. 381, was an action by a guest in defendant's automobile for injuries sustained when the automobile ran into a tree. The jury returned a verdict for the defendant. The Supreme Court held that this verdict was contrary to the

weight of the evidence and ordered a new trial. *Sheean* v. *Foster*, (Cal.) 251 Pac. 235, was a suit for injuries received by plaintiff when riding in defendant's car as a guest. While the driver of the car was looking for a switch key the automobile ran into a tree standing near the highway. The jury returned a verdict for the defendant. The appellate court ordered a new trial because the evidence did not show that the defendant exercised ordinary care for the safety of the plaintiff.

In this case the approaching automobile passed on its right of the road. Defendant had twelve feet of the macadam within which to pass this automobile. After this automobile had passed, defendant had the entire width of the tar road, as no other vehicle was approaching him. If the defendant had reduced the speed of his automobile to a reasonable and proper rate of speed, undoubtedly he could have passed on the macadam road or, at least , have stopped his automobile in time to have avoided driving it into a tree. The tree in this case was a large one and had been growing near the edge of the tar road for many years. The tree did not cause the accident; the accident was caused by the negligence of the defendant in driving his automobile against the tree. The verdicts for the defendant cannot be justified on the evidence which clearly proved negligence on the part of the defendant.

For the reasons stated the plaintiffs' exceptions to the decision of the trial justice denying their motions for new trials should be sustained.

*Greene, Kennedy & Greene,* for plaintiffs.
*McGovern & Slattery, Fred B. Perkins,* for defendant.