[Civ. No. 4756.  Third Appellate District.—December 22, 1932.]

J. A. MEADS, Respondent, v. NEIL DEENER et al., Appellants.

Butler, Van Dyke, Desmond & Harris for Appellants.

Langdon & Tope for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendants for damages based upon injuries received in an automobile collision occurring on the twenty-first day of May, 1931. The collision took place on Folsom Boulevard between Forty-seventh and Forty-eighth Streets in the city of Sacramento, at about 5:30 o'clock in the afternoon. Just prior to the collision the plaintiff was driving easterly and the defendant Deener was driving an automobile westerly on the boulevard. The record shows that Deener was the agent of the defendant Wheatley, in transacting business for him in the city of Sacramento. Folsom Boulevard, at the place of the collision, is 48 feet wide, level, paved and is a straightaway for many blocks. At the time of the collision the pavement was dry and had no obstruction thereon, other than the usual traffic. The testimony varies as to the speed of the automobiles being driven by the respective parties, witnesses estimating the speed of the car driven by the defendant Deener at from 25 to 45 miles per hour, and that of the speed of the car driven by the plaintiff at about 20 miles per hour.

The cause was tried before a jury and the plaintiff awarded damages in the sum of $18,000. The testimony showed that the plaintiff had incurred special damages in the sum of $1350 on account of loss of earnings, and $708.35 on account of doctors' and hospital bills.

Upon this apppeal the appellant assigns three reasons as grounds for reversal: First: That the court erred in instructing the jury on the question of negligence in that it instructed the jury that a violation of the provisions of the California Vehicle Act, regulating the speed of automobiles, constituted negligence. Second: That counsel for the plaintiff were guilty of prejudicial misconduct in the examination of the witness McDonald, touching the sobriety of the defendant Deener. Third: That the damages were excessive.

The cause of action, as we have stated, is based upon an automobile collision which occurred on the twenty-first day

of May, 1931. The action was begun by the filing of a complaint by the plaintiff on the twenty-sixth day of October, 1931. By an act of the legislature which became effective on August 14, 1931, subdivision "d" of section 113 of the California Vehicle Act was added by the legislature. That subdivision reads: "In any civil action the driver of a vehicle who has operated such vehicle at a speed in excess of the miles per hour set forth in subdivision B, applicable at the time and place, shall not be deemed to have been negligent by reason thereof as a matter of law, but in all such actions the burden shall be upon the opposing party to establish that the operation of such vehicle at such speed constituted negligence."

After reading to the jury the various provisions of section 113 of the California Vehicle Act as it read prior to the amendment thereto which we have just set forth in full, relative to the speed of automobiles, allowed by law, the court instructed the jury as follows:

"You are instructed that the violation of a positive duty enjoined by law is negligence, and if such negligence is the proximate cause of injury to another, the injured person or persons may recover from the person or persons guilty of such violation if the party injured is himself free from contributory negligence. You are further instructed that an act which is performed in violation of an ordinance or statute is presumptively an act of negligence, and while the defendants are permitted to rebut such presumption by showing that the act was justifiable or excusable under the circumstances, until so rebutted it is conclusive. . . . I further instruct you that if you find from the evidence that the defendant Neil Deener, at the time and place of the accident complained of, violated any of the provisions of the California Vehicle Act which are included in these instructions, and that such violation is the proximate cause of the injuries to the plaintiff; and you further find from the evidence that at said time said defendant Neil Deener was employed by and working for the defendant N. W. Wheatley, doing business under the firm name and style of 'Mother's Cake and Cookie Company', and that said Neil Deener was at said time and place driving and operating the Ford automobile, which he was driving in the course of such employ-

ment; and if you further find that the plaintiff was not guilty of contributory negligence, your verdict should be in favor of the plaintiff and against the defendants.''

On the part of the appellant it is contended that the amendment to section 113 of the California Vehicle Act in 1931, relates only to a matter of evidence, and did not affect any vested rights, the argument being that there is no constitutional prohibition preventing the legislature from changing rules of evidence, and that such rules become effective immediately, unless otherwise controlled by the act effecting the change, and apply to pending cases and to causes of action which may have arisen at a date prior to such change, and therefore, at the time of the trial of this action, proof of the violation of any of the provisions of the California Vehicle Act relative to speed, did not establish negligence as a matter of law, but that it still devolved upon the plaintiff to establish, in addition to the excessive speed, the fact of negligent driving.

On the part of the respondent it is contended that the fact of excessive speed, constituting negligence *per se* at the time of the collision involved herein, gave to the plaintiff a vested right, and that his right of recovery of damages based thereon was and is a property right which could not be taken away by any subsequent act of the legislature. Citing such cases as *Scragg* v. *Sallee,* 24 Cal. App. 133 [140 Pac. 706], where, on page 144, it is said that in this state the infraction of an ordinance or rule of law is ''conclusive evidence of negligence'' (citing a long list of cases). That such was the law on the twenty-first day of May, 1931, is not disputed.

While it would be interesting to follow the line of argument of the respective counsel, to take up and analyze and apply the various cases cited by them, by reason of what appears in the testimony of this case, it is wholly immaterial upon whom the court, in its instruction, placed the burden of proof, for the simple reason that the testimony of the defendant Deener fixes negligence upon his actions, irrespective of anything offered by the plaintiff. This testimony shows that on the afternoon in question, the defendant Deener was driving westward facing the sunlight, at a speed of 25 miles an hour, which he did not lessen; that he was blinded by the sunlight so that he did not see the approach-

ing car of the plaintiff until "just before the collision"; that he had just passed another car going in the same direction. The defendant's explanation was further: "I don't know how I can make it more plain—the sun in my eyes, and I presumed anyone coming on the other side had room to get by." As shown by the cases hereafter cited, such testimony establishes negligence on the part of the driver who takes no precautions to avoid colliding with oncoming cars, when his sight is blinded by the sun. Though offered as an excuse by automobile drivers who fail to take any precaution to avoid accidents when blinded by the sunlight, such action constitutes strong evidence of negligence in every state.

In addition to section 113 of the California Vehicle Act we may quote section 112, to wit: "It shall be unlawful for any person who is an habitual user of narcotic drugs or who is under the influence of intoxicating liquor or narcotic drugs, to drive a vehicle on any public highway within this state." The testimony shows that the defendant drank a bottle of "home-brew" beer about two hours before the collision; that at the time of the collision his breath was strongly impregnated with the odor of alcohol; that he staggered when he walked; that before the collision he was crouched down over the steering-wheel; that he was examined at the hospital where he was taken, for intoxication. The examining physician certified that he was not then intoxicated, although he detected the odor of alcohol. Several witnesses testified to the condition of the defendant which we have just stated, amply justifying the jury in concluding that the defendant had violated section 112 of the California Vehicle Act.

The testimony in this case justified the jury in concluding that the following facts have been established: That the plaintiff was driving easterly on Folsom Boulevard on the south half thereof; and that, about the middle of such south half; that the defendant was driving westerly on the boulevard; that he was driving in that direction in a zigzag course; that the automobile went from the north to the south side without any warning; then changed its course back to the center again and to the south side; that the plaintiff brought his car almost to a complete stop; that the defendant was driving anywhere from 25 to 40 miles an hour; that the left side of the defendant's car collided

with the plaintiff's car. This is, in substance, the testimony of the plaintiff.

The witness, Mrs. Nott, who was a passenger of the plaintiff, testified in substance as follows: That she was sitting on the right side of the car, with the plaintiff's wife between her and the plaintiff; that the plaintiff was at the wheel. She first saw the automobile driven by the defendant as it crossed Forty-seventh Street, when it was about a block away. Plaintiff was driving about 20 miles an hour, and continued at that speed. The defendant's car was on the north side of the street when the witness first saw it. Plaintiff was driving in the main line of traffic going easterly. Defendant's car suddenly darted from the north side of the street over to the south curb. After the defendant got there he did not stop, but turned and came back toward the center of the street. The defendant came weaving down the south side of the center, at such a rate of speed that after you saw what he was going to do, there was no opportunity to get away from him. This witness estimated defendant's speed at 40 or 50 miles an hour. The plaintiff had applied the brakes on his car prior to the collision and had almost practically stopped. The defendant made many crooked turns; he would go over to the center of the street, then come back to the south side, then weave in, with perhaps half or a little more of his car over the center line, and then swing on to the south, almost all the time, and would get part of his car over the middle, and then make a larger circle over to the south side.

The testimony of the witness, Mrs. Meads, was practically the same as that of Mrs. Nott.

J. E. Morrow and his wife, Daisy Morrow, witnesses on the part of the plaintiff, testified in substance as follows: "We were following the plaintiff's car with our own car. The plaintiff was proceeding at a speed of from 20 to 25 miles an hour, running about 12 feet from the south curb." The width of the street at the point of the collision was 40 feet from curb to curb. These witnesses testified as to wild zigzagging of defendant's car.

The defendant Deener testified that he was driving west on Folsom Boulevard; that just prior to the collision he was going about 25 miles an hour; that before the collision he saw no car on the street coming toward him, nor did he see

the plaintiff's car until immediately before the collision; he saw no cars parked along the north curb near the scene of the accident. (There is testimony in the record showing parked cars.) The last thing he remembered he was pulling his wheel to the right. The defendant testified he was not under the influence of intoxicating liquor at the time, and had had only one bottle of ''home-brew'' about half-past 2 in the afternoon. The defendant further testified that after passing Forty-eighth Street going west, the car ahead of him was going slowly; he said he pulled to the south to the approximate middle of the street in order to pass, and that he might possibly have gone six inches beyond the center. The defendant, as we have said, testified that he did not see the Meads car until just before the collision, by reason of the sun blinding his eyes, giving the testimony which we have heretofore quoted.

The witness McDonald stated that he examined the defendant for intoxication at about 5:40 P. M. on May 21st; he made a memorandum reading: ''He is not intoxicated now.'' The witness stated, however, that there was the odor of alcohol on the defendant's breath.

The additional testimony in the record as to what occurred in the main substantiates what we have set forth, but need not be summarized further, other than to say it amply supports the finding of the jury, and were there no other reasons for supporting the verdict, we think it is sufficient, under section 4½ of article VI of the Constitution, to preclude a reversal on account of any alleged erroneous instructions given to the jury. However, the cases bearing upon driving when one is blinded by either the lights of oncoming cars or by sunlight are decisive, and establish the negligence of the defendant in this case beyond controversy.

While our attention has been called to subdivision (d) of section 113 of the California Vehicle Act relative to the change in the proof of negligence, it apparently has been overlooked that subdivision (d) is confined exclusively to that portion of section 113 of the California Vehicle Act as it appears in subdivision (b). It does not affect or limit or modify or change any rules of law or decisions of courts based upon subdivision (a) of section 113 of the California Vehicle Act, which reads: ''Any person driving a vehicle on a public highway of this state shall drive the same at a

careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person.''

That this subdivision of section 113 of the California Vehicle Act was violated by the defendant, and his negligence established by his own testimony, is shown by the following cases:

In *Woodhead* v. *Wilkinson*, 181 Cal. 599 [185 Pac. 851, 10 A. L. R. 291], it is said: ''Appellant also complains of the finding that he was negligent because when he found that his vision was obscured by the glare upon his windshield from the lights of the approaching automobile, he failed to look around the side of the shield. Obviously, he would be bound as a careful driver to stop as soon as he could reach a place by the side of the road, or to place himself in a position from which he could see the road over which he was driving. He did not stop at once, and if, under all the circumstances, looking around the end of the windshield was the only way in which he could safely proceed, then he was negligent in failing to adopt that plan. The same reason applies to the finding that he was negligent in failing to observe the highway immediately in front of the car which he was driving.''

The cases showing that a driver is negligent in not slowing up his car and bringing it under such control that he can stop immediately when blinded by approaching lights are carefully reviewed in the opinion in the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027], in an opinion written by Mr. Justice Hart of the Third District Court of Appeal and adopted as its opinion by the Supreme Court. Quoting from the case of *Woodhead* v. *Wilkinson, supra,* the following appears in the opinion: ''That it is the duty of a driver of an automobile to anticipate the presence of pedestrians upon the highway over which he is thus traveling, is thoroughly settled as a part of the law of the road and is emphasized in *Zarzana* v. *Neve Drug Co.*, 180 Cal. 32, 37 [179 Pac. 203, 15 A. L. R. 401], and in *Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 340 [208 Pac. 125]. In the first named of these cases it is said: 'Aside from the mandate of the statute the driver

of a motor vehicle is bound to use reasonable care to anticipate the presence on the streets of other persons having equal rights with himself to be there.'" And further: "In the case last mentioned the court said: 'He (the driver) still remains bound to anticipate that he may meet persons at any point of the street, and he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution, and if the situation requires he must slow and stop.'" (Citing authorities.)

In the case of *Havens* v. *Loebel*, 103 Cal. App. 294 [284 Pac. 676, 679] (hearing denied by the Supreme Court), this court had occasion to again review the law relative to the duty of an automobile driver, when blinded by headlights of approaching cars, or when blinded by the sunlight, and held that the duty devolving upon the driver was the same in both instances. This court quoted from the Hatzakorzian case, *supra*, as follows: "It is only necessary to compare the foregoing *résumé* of Kennell's own testimony with the requirements of the law with respect to the duties of operators of automobiles when driving over the highways of the state to force the conclusion that, from the time the glare from the lights of the approaching car first reflected through his windshield into his eyes, he proceeded on until he struck and killed the deceased with a degree of indifference or recklessness as to the rights and safety of others who might be ahead of him on the highway closely approaching, if indeed, not amounting, under the circumstances, as revealed by his own testimony, to gross negligence." And then this court added: "We think this statement of the law a true and correct statement as applicable to the case at bar. The plaintiff, by his own testimony, was traveling thirty miles an hour, with his eyes blinded by the sunlight so that he could not or did not see the approach of the defendant's automobile. He did not slacken his speed during the time that he was blinded, but permitted his car to move forward under conditions rendering it impossible for him to see the defendant's car until he was within four or five feet of it. Thus, his negligence, by his own words, continued right up to and including the time when his automobile crashed into the one driven by the defendant." This language applies in

every particular to the conditions presented by the record on appeal in this case. The defendant, by his own testimony, proves that he proceeded forward on a city street, so blinded by the sunlight that he could not see the plaintiff's approaching car until he crashed into it. His testimony further establishes beyond controversy that he did not slacken the speed of his car, notwithstanding the fact that the law requires every automobile driver to anticipate the presence of others upon the highway. Indeed, the traffic has become so heavy, whether upon country highways or city streets, that constant vigilance is required on the part of drivers, and no driver is at liberty to assume that others will keep out of his way when his sight is blinded either by the headlights of approaching cars or by the glare of the sun.

The cases are so numerous supporting what we have just said, and as decided by our own courts, that reference need be made only to a few of them.

In *Holsaple* v. *Superintendents of Poor*, 232 Mich. 603 [206 N. W. 529], we find the rule which we are supporting thus stated: "If, as he claims, the driver was confused or blinded by the bright lights of the other car so he could not see, it was his duty to stop or slacken his speed to safety. If his vision was obscured by the glaring lights of the approaching car, it was his duty to slacken his speed and have his car under such control that he might stop it immediately if necessary." (Citing additional cases.)

In *Mathers* v. *Botsford*, 86 Fla. 40 [97 South. 282, 32 A. L. R. 881], the duty of automobile drivers, when blinded by approaching lights, is worded as follows: "Where the vision of the driver of an automobile is so obscured or obstructed by bright lights on a car coming from the opposite direction that the driver could not see anything on the road ahead of him, it is the duty of the driver whose vision is so obscured to exercise all ordinary and reasonable care and diligence to avoid injury to anyone who might rightfully be on the road in front of him, even to the extent, if need be, of stopping his car, if he could not see ahead of him because of the bright lights of the car he was meeting on the road." A number of cases supporting this rule will be found in the annotations of the case as reported in American

Law Reports, *supra,* beginning on page 887. Other cases might be cited from other jurisdictions, but we think the rule sufficiently established by the three California cases from which we have quoted, and that the negligence of the defendant is so fully established by his own testimony that no errors of the court, if errors were committed as to the shifting of the burden of proof, could or would constitute prejudicial error.

We do not need to enter into a discussion of whether the defendant was scientifically intoxicated, or intoxicated as a matter of fact, as we think the evidence amply justified the jury in concluding that the latter was the case.

The following *résumé* of the injuries suffered by the plaintiff as set forth in the respondent's brief, which we have verified by an examination of the record, we think shows that the judgment cannot be considered as excessive:

"Plaintiff is a married man, 49 years old, with an expectancy of 22 years. Occupation: drives a truck and trucking logs to sawmill. Right leg amputated about six inches below knee in 1906. Artificial leg on right side. Plaintiff did not use crutch or cane before accident; uses crutches now. Weighed 205 lbs. before accident as compared with 185 lbs. after release from sanitarium. Plaintiff had no difficulty in walking without crutch or cane, and in carrying on heavy work before accident, and received wages of $150.00 per month. Had total disability at time of trial, which was many months after the accident, and has a 50% permanent disability caused by injuries received in this accident. Comminuted fracture of knee-cap left leg. Fracture of radius, the large bone of left forearm. Dislocation of one of bones in wrist, left hand. Fracture of tip of small bone at left wrist. Fracture end of nose. Knee-cap operated upon. Knee opened up from one side of knee to the other. Knee-cap smashed and fragments tied together with wire. Wire still in knee, and will require a future operation to remove the wire. One hundred stitches on inside of knee, and 32 stitches on outside of knee. Permanent scar on knee 8½ inches long. Plaster of paris cast on left leg from hip down for several weeks. Operation on forearm. Attempted to set forearm twice before operating, but unsuccessful. Necessary to open up flesh and wire bones together. Wire still in forearm and will necessitate future

operat'on to remove the same. In Sutter Hospital 34 days. Laid on back in hospital 27 days. Thereafter in Sanitarium 37 days. In bed most of the time. Thereafter removed to his home and in weakened condition and in bed most of the time for many weeks. Took two anaesthetics. Permanent scar on arm 3½ inches long. Will suffer future pain, both in knee and arm. Plaintiff is nervous and will continue nervous in the future. Cries and has nervous chills. Has shaking spells. The arm and left knee cause spasmodic jerking spells at night, and interferes with plaintiff's sleep, existing from date of accident up to date of trial. Temperature for several days of 101½ degrees. Face bleeding, nose swollen and for 2 weeks both eyes swollen shut and black and blue after the accident. Under opiates for several days. Cannot work since accident, and does not know when his health will permit him to resume work of any kind. Still has discomfort in knee and water on the knee, stiffness in knee, which will permanently persist. Plaintiff has chronic inflammation in knee-joint. Permanent limitation of motion of left knee and restricted flexion of the knee. Pain in knee will not permit plaintiff to resume his work. Permanently disabled from doing heavy work. Unable to straighten knee fully. Permanent arthritis in knee-joint. Use of knee will make it worse instead of better. Vigorous use would also make arthritis in the knee worse. Disability in left knee is worse than if plaintiff had a normal right leg. Permanent disability in the movements of left arm, and permanent limitation of movement in turning left hand. Permanent traumatic arthritis in both left knee and left wrist. Carried left arm in splint and sling for 70 to 80 days. At the time of trial, several months after accident, plaintiff had a loss of grip in the left hand 80 to 85 compared with 200 degrees in right hand. It was stipulated that the plaintiff's bills for doctors and hospital at time of trial were $708.35, and that his loss of wages at time of trial was $1350.00.''

The assignment of misconduct on the part of counsel for the plaintiff refers only to the introduction in evidence of the memorandum made by Dr. McDonald heretofore referred to, and does not appear to have sufficient merit to warrant a reversal, even if the court erred with respect thereto. In view of the record no reversal of the judgment

could be had based upon such grounds, and therefore does not call for any further lengthening of this opinion.

The judgment is affirmed.

Thompson (R. L.), J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 20, 1933.