DONALD KEITH TEMPLAR, Administrator of the Estate of

KEITH EDWARD TEMPLAR, Deceased,

*Plaintiff and Appellant,*

vs.

JAMES TONGATE,

*Defendant and Respondent.*

(No. 2574; March 31st, 1953; 255 Pac. (2d) 223)

For the plaintiff and appellant, the cause was sub-

mitted upon the brief and also oral argument of Edward E. Murane and R. R. Bostwick both of Casper, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of W. J. Wehrle and C. M. Crowell both of Casper, Wyoming.

## OPINION

BLUME, Chief Justice.

This was an action brought against defendant by the administrator of the estate of Keith Edward Templar, deceased, for damages on account of the death of deceased by reason of a collision of the Mercury car of defendant and the Ford car of deceased. The jury

returned a verdict in favor of the defendant and the plaintiff has appealed to this court.

Plaintiff alleged in his petition that he is the duly appointed administrator of the deceased; that the deceased died in Natrona County, Wyoming, on August 6, 1950, as a result of injuries received in a collision which occurred in Natrona County on July 31, 1950, and that the plaintiff herein, Donald Keith Templar, a son of the deceased, and Ruby B. Templar, his surviving spouse, are the only heirs at law of the deceased; that on July 31, 1950, the defendant, James Tongate, was the owner of a Mercury sedan; that about seven o'clock a. m. on said date, the defendant was driving his said car in an easterly direction on highway U. S. No. 20, west of Casper, coming from Shoshoni, Wyoming, in a negligent and careless manner without having his car under proper control and without keeping a proper and attentive lookout on the highway; that the deceased was driving a Ford car also in an easterly direction and the defendant by reason of his negligence in the operation of his vehicle collided with the deceased, inflicting injury on the deceased which resulted in his death. Plaintiff claimed damages in the sum of $50,000 together with doctor bills, hospital bills, ambulance service, nurses' bills, and funeral expense in the sum of $1,408.64. Defendant filed an answer. In his first defense he denied any negligence on his part. In his second defense, he alleged that deceased was guilty of contributory negligence. In a third defense he alleged that the sole heirs at law of the decedent are Ruby B. Templar and Donald Keith Templar, both of age; that on August 10, 1950, for a valuable consideration they released the defendant from all claims and liability; that as a portion of the consideration there was paid to Ruby B. Templar and Donald K. Templar the sum of $1,500 and that the total consideration paid

for the release was the sum of $2,922.64. In the amended reply, plaintiff denied any affirmative allegation on the part of the defendant including the allegation of the third defense, as to the execution of the release, and as a further reply he alleged in substance that the release was obtained from Ruby B. Templar and Donald Keith Templar by duress, fraud and misrepresentation, and also that in view of the fact that § 3-404, W.C.S. 1945, provides that every action for death shall be brought by the personal representative of the deceased, the release obtained from the heirs was invalid. To this further defense, the defendant demurred on the grounds that the fraud, duress and misrepresentation alleged could not be made in law by the plaintiff, the administrator of the estate, and further that the sole heirs of the deceased could make a valid release. The court overruled the demurrer in its entirety. An exception was duly taken.

1. In the opening statement to the jury, counsel for defendant stated that, subject to the court's ruling, the evidence would show a release of the claim made by plaintiff. Counsel for the plaintiff thereupon moved that in view of that statement the jury be discharged. The motion was overruled and this is assigned as error.

We may admit for the purpose of this case that orderly procedure makes it advisable that, when the trial court has definitely settled a point of law by a ruling on a demurrer, the party against whom the ruling has been made should not, ordinarily, but with some exceptions, persist in raising the same point again in the trial of the case, although the ruling, of course, may be subsequently questioned in the appellate court. See City of Casper v. Simpson, Wyo. 247 P. (2d) 154, 71 C.J.S. 557. The effect of a ruling on a demurrer is considered in 49 C.J. 451, § 559, and 71 C.J.S. 555 et seq.; see also 5 C.J.S. 152, § 1495, and full discussion by

Justice Potter in Grover Irr. & Land Co. v. Lovella Ditch, R. & Irr. Co., 21 Wyo. 204, 131 P. 43, point 2. The state of the pleadings in this case is in a rather peculiar situation. Whether or not the facts pleaded in the third defense of the defendant showed a valid release, was, it seems, a pure question of law. That might have been raised by demurring to that defense. Plaintiff, instead of pursuing that course, chose to plead that the release was obtained by duress, fraud and misrepresentation, thereby impliedly admitting the validity of such release if no such duress, fraud and misrepresentation had intervened. When accordingly, the court overruled the demurrer, it held in effect that such duress, fraud and misrepresentation were well pleaded, thus far clearly leaving the third defense setting forth the release, as well as the question of duress, fraud and misrepresentation, in the case and justifying the opening statement of counsel for defendant. The further pleading in the amended reply that the release was not valid as above set forth would seem to present a pure question of law. And that would seem to be true also as to the assertion in the demurrer that the release was valid. If the court, in ruling on the demurrer, made a definite pronouncement on the law in this connection, it was only by reason of the statement that the demurrer was overruled *in its entirety,* and then only if that ruling were considered as having the same effect as though a demurrer by the plaintiff to the defendant's third defense had been sustained. In view of the uncertainty in this connection, we are hardly prepared to hold, since the allegations in the third defense were not equivalent to the proof thereof, that counsel for the defendant was not justified in saying what he did in his opening statement to the jury, in order that, if necessary, his view of the case might be properly reviewed in this court. We think, moreover, that the mere statement, made in good faith in the opening state-

ment of counsel for defendant, that the release was given, was not reversible error. Nicholson v. State, 18 Wyo. 298, 106 P. 929. Cleavenger v. Castle, 255 Mich. 66, 237 N.W. 542. In fact, the statement impliedly admitted liability for damages on the part of the defendant, and so, in view of the fact that the release was not admitted in evidence, would seem to have been more prejudicial to the defendant than to the plaintiff. The release was offered in evidence outside of the hearing of the jury and was rejected. The jury returned a verdict in favor of the defendant. In view of our conclusion in, this case, the question as to whether or not the release should have been received in evidence is not before us.

2. Evidence was introduced that all the special damages, that is to say, doctor bills, hospital bills, nursing bills, ambulance bill and funeral expenses, were all paid by the defendant. And in accordance with that evidence the court by Instruction No. 13, instructed the jury that if the verdict were in favor of the plaintiff, he would not be allowed any sum for such bills. These bills were all paid by the defendant and there would be no possible reason why the plaintiff should again recover the sums that had once been paid. Moreover, no exception was taken to the instruction. We find no error in this connection.

3. Plaintiff asked the court to give the following instruction to the jury: "The Court instructs the Jury that the driver of an Automobile upon the public highways is required to have his automobile under such reasonable control as will at all times enable him to avoid collision with other vehicles lawfully on the highway and operated with ordinary care. Ordinary care requires of every man who drives a motor vehicle on the public highways to keep a lookout for vehicles that may be upon the highway." The court did not give In-

struction No. A., but gave Instruction No. 7 which follows Instruction No. A so far as quoted above verbatim. So that no error could be predicated in this connection. However, counsel also asked in Instruction A the following: " * * * and to keep his motor vehicle under such control as to be able to check its speed or stop it absolutely if necessary to avoid injury to himself or others when danger may be expected or is apparent." Instead of giving that portion of Instruction No. A verbatim, the court gave Instruction No. 11 to the following effect: "You are instructed that it is the duty of the driver of an automobile to observe the highway ahead of him. That if, through conditions beyond his control, he cannot see an object upon the highway ahead of him, then he should reduce his speed and, if necessary, come to a stop until he can observe the highway ahead of him." It would seem that by Instructions No. 7 and 11, the court substantially instructed the jury as requested by plaintiff in Instruction No. A. The jury could not have been misled so that the assignment of error in this connection must be overruled.

Other assignments of error question the soundness of other instructions but are not argued, and so are waived.

4. It is contended by appellant that the verdict of the jury is not sustained by sufficient evidence, since the negligence of the defendant is clear. It was stated recently by some members of the Supreme Court of the United States in Stone v. New York C. & St. L. R. Co., 73 S. Ct. 358, that: "The determination of whether there is adequate evidence to sustain a claim of negligence is one of the most elusive determinations that judges are called upon to make." It is equally difficult to state the conclusion in such a case by a satisfying opinion. It is necessary to review the evidence which in

so far as pertinent here, is in substance as follows: The collision involved herein occurred about 15 miles west of Casper on the highway heretofore mentioned. The defendant is the only living witness who saw it. It was in the so-called 60 mile zone in which speed of 60 miles per hour was permissible. The oiled mat of the highway was twenty-two feet wide and with its shoulders nearly thirty feet in width. There was ample room to park a car on the south side of the road. The road was dry at the time of the collision and there was no traffic thereon, aside from that of defendant and deceased. The deceased was 53 years of age and the only heirs at law are those heretofore mentioned. He owned a section of land immediately north of the place of the collision on which he ran some sheep. The residence was northeast of the place of the collision. It was not visible from the highway. He was accustomed to make an inspection trip every morning to see where the sheep were grazing. He made a sort of circle in making his inspection trips, traveling about 3/8 of a mile west from his residence; then to the highway 1/8 of a mile; then east on the highway to the main gate which was about 1/4 of a mile north of the place of the collision and then to the gate 1/4 of a mile to his residence. The land was hilly and it was not always easy for him to see where the sheep were grazing so that, as the evidence indicates, he generally traveled slowly along the highway while he was looking for the sheep and at times he had to stop in order to discover his sheep. On the morning in question he was on one of these trips, driving his car eastward on the highway, in the south lane, the same lane traveled by the defendant. As hereafter shown he was probably driving slowly.

The defendant traveled from Whitehall, Montana, a distance of about 510 miles from the scene of the

collision, on his way to Texas. He started about 11 a. m. on July 30, 1950. His brother traveled with him and drove part of the time while they were traveling through Montana. The defendant did the driving in Wyoming. He slept for a period of about three hours in his car after they left Thermopolis, Wyoming, and before reaching the Wind River Canyon and he again slept for approximately two hours in his car a little east of Shoshoni, Wyoming. He then traveled eastward toward Casper. The sun was up while he was nearing the scene of the collision. It bothered him to some extent and he had his visor down. As he approached the scene of the collision he had to go up an incline which was gradual, to the crest of a knoll, or small hill. This crest was approximately 1000 feet from the scene of the collision and the intervening space was unobstructed. Defendant traveled at a speed of 50 to 55 miles per hour. He attempted to keep the speed down to approximately 50 miles an hour to see how long his gas would last when traveling at that speed. When asked as to whether or not he slackened his speed, he answered: "Maybe I slowed down when I topped this rise. You know people couldn't come over a hill just heck bent for election. Q. How much did you slow down? A. I wouldn't know. I imagine I slowed a good bit, not a whole lot." When he came to the top of the knoll, the sun blinded him. This is his language: "I came over the hill; as I topped the rise, the sun shifted. I mean it was an incline there, and as I came over, the sun kind of got me there for a moment, and then that is when I saw the Templar car. After I came up on the hill the sun momentarily blinded me, and after that I noticed the car * * * there was an incline there and you know at a certain distance there that you will be momentarily blinded." He did not see the Templar car until he was approximately one hundred twenty-five feet from it. That car, he stated, was either stopped

or had just started up when he first saw it. "It was awful close when I saw him and it just scared the mortal heck out of me." He took his foot off the accelerator, put it on the brakes and swerved his car to the left as far as possible, but the right front of his car struck the right rear of the Templar car. His left wrist was broken and he lost complete control of his car slumping over to the right onto his brother. He broke his hip, hurt his pelvis, shoulder, shoulder blade and both sides of his wrist and injured his bladder. He was so severely injured that he was taken to the hospital in Casper where he stayed for a period of ten days and was not able to return to work until six months thereafter. The Templar car was thrown into the borrow pit to the south and was completely turned around. The deceased sustained severe injuries and was taken to the hospital at Casper where he died on August 6, 1950. The defendant's car, after the defendant had lost control of it, traveled along the road to the left of the point of collision a distance of approximately two hundred fifty feet and went into the borrow pit on the north side of the road and continued a further distance of approximately sixty-three feet before it came to a stop. The time of the collision was approximately 6:30 a. m. on the morning of July 31, 1950. The brother of the defendant was alseep at the time of the accident and did not see it. Defendant testified that his brother broke his neck but he was conscious.

Counsel for the defendant contended that in the first place the jury were justified in finding that the deceased was negligent and that his actions were the proximate cause of the collision herein. They point to the testimony that he was either stopping on the main traveled highway, although he had room to park in the borrow pit, or that he was traveling so slowly

that it was at an unlawful rate of speed and call attention to Section 60-503, W.C.S. 1945, which provides: "No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." Section 60-528 provides: "Upon any highway outside a business or residence district no person shall stop, park, or leave standing any vehicle whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway." Counsel say that the deceased violated both of these provisions. Counsel contend in the second place, if we understand them, that the jury had a right to find that the defendant was not negligent by reason of the fact that he was blinded by the sun and was unable to see the deceased until it was too late to avoid the collision. We shall consider the second of these contentions first and mention the first of these contentions in connection therewith.

Before reaching the top of the knoll here in question the defendant had had some trouble with the sun shining into his eyes. But he had his visor down and it does not appear that he had any special trouble seeing ahead. He traveled at a speed usual and ordinary at that time and place, so he could not have been said to have been negligent at that time, at least as a matter of law. Sidle v. Baker, 52 Ohio App. 89, 3 N.E. (2d) 537. A severer condition confronted the defendant when he reached the crest of the knoll. The sun shifted, he

stated, meaning probably that it met his eyes at a different angle and that it blinded him and that he did not see the deceased until he was 125 feet away from him. Counsel for plaintiff contend that with the sun shining in defendant's eyes he "should have taken knowledge of an obvious danger and should have slacked off his speed sufficiently that he could control his vehicle in the event an emergency arose. Certainly an emergency arose in the case and the Respondent driver was unable to act in that emergency, due to the fact that he was negligent leading up to the occurrence of the emergency." Counsel for defendant, as already stated maintain that the sun blinding the defendant was an intervening agency which itself excused his conduct. This contention is a novel one and we should, we think, discuss it at a reasonable length for the purpose of future cases. It is, but one phase of the larger question as to the duty of a motorist when his vision is obstructed. Counsel rely on Lemos v. Madden, 28 Wyo. 1, 200 P. 791. That case involved a sudden and severe storm. It did not involve the duty of a motorist. We have found no cases which sustain the theory of counsel for defendant. On the contrary it is stated in Fairman v. Cook, 142 Neb. 893, 8 N.W. (2d) 315, 318: "On principle it would appear that the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances." This quotation was approved in the case of Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N.W. (2d) 250. Being blinded by the sunlight is no exception to the rule as has been expressly held in Meads v. Deener, 128 Cal. App. 328, 17 P. (2d) 198; Havens v. Loebel,

103 Cal. App. 209, 284 P. 676, 679; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574. The cases dealing with the duty of a motorist when his vision is obscured by the elements of nature are very numerous, and are to some extent dealt with in Gamet v. Beazley, 62 Wyo. 1, 159 P. (2d) 916; and Price v. State Highway Commission 62 Wyo. 385, 167 P. (2d) 309. Most of the cases, it is true, deal with traffic in cities or densely populated areas, or with driving at night. The cases are collected in 60 C.J.S. 698, 699; 5 Am. Jur. 652 et seq.; 1 Blashfield Cyc. of Automobile Law and Practice, see particularly §§ 744 and 758; Decennial Digest, Automobiles 168 (9). In 60 C.J.S. 698, it is stated: "It is the duty of a driver to stop when he is entirely unable to see the way ahead of him, and it has, therefore, been held negligence for the driver to continue to drive ahead when he is completely blinded by the headlights of an approaching vehicle, an electric arc street light, or the reflection of street lights in his windshield, or when his vision is entirely obscured by smoke, steam, fog, dust, or other conditions of the weather." In Mathers v. Botsford, 86 Fla. 40, 97 So. 282,, 32 A.L.R. 881, the rule was stated in language approved by other courts as follows: "When the vision of the driver of the defendant's car was so obstructed or obscured by the bright lights on the car coming from the opposite direction that he could not see any one on the road ahead of him, it was the duty of the driver of defendant's car to exercise all ordinary and reasonable care and diligence to avoid injury to any one who might rightfully be on the road in front of him, even to the extent, if need be, of stopping his car if he could not see ahead of him because of the bright lights on the car he was meeting on the road." In Martin v. Parkins, supra, in which the sun light obscured the vision of the driver the court, at page 576, said: "True, with the sun blinding his vision he was required to use greater care than

would otherwise have been necessary, but whether it was negligence to proceed as he did depended upon all of the circumstances. As to this, reasonable men might differ." In Meads v. Deener, 128 Cal. App. 328, 17 P. (2d) 198, 202, in which the driver's vision was obscured by sun light, the court said in part: "The defendant, by his own testimony, proves that he proceeded forward on a city street, so blinded by the sunlight that he could not see the plaintiff's approaching car until he crashed into it. His testimony further establishes beyond controversy that he did not slacken the speed of his car, notwithstanding the fact that the law requires every automobile driver to anticipate the presence of others upon the highway. Indeed, the traffic has become so heavy, whether upon country highways or city streets, that constant vigilance is required on the part of drivers, and no driver is at liberty to assume that others will keep out of his way when his sight is blinded either by the headlights of approaching cars or by the glare of the sun."

The defendant in this case did not stop. He perhaps slackened his speed somewhat but not a great deal. Hence it is quite clear that we cannot say that the defendant was absolved from responsibility herein as a matter of law by reason of the fact that the sun obscured his vision. On the contrary the only doubt is as to whether he should be declared guilty of negligence as a matter of law—as some of the courts would apparently do—or whether, considering all the facts and circumstances herein, including the behavior of the deceased, the question of defendant's negligence was properly left to the jury. It has not been easy for us to arrive at a conclusion and we have, to use Justinian's phrase, "burned much midnight oil" in trying to find a case similar to the case at bar, but have not succeeded. We are reminded of what was stated in Loney

v. Laramie Auto Co., 36 Wyo. 339, 354, 255 P. 350, that: "The issue of negligence or contributory negligence is ordinarily one to be determined by the jury. 20 R.C.L. 109, 166. That is true even in a case where the testimony, as in the case at bar, is undisputed, if different minds may fairly arrive at different conclusions, and where the inferences from the facts are not so certain that all reasonable men, in the exercise of fair and impartial judgment, must agree upon them." And in 65 C.J.S. 1129, it is stated that: "The question whether the conduct of defendant measured up to the standard of 'ordinary care,' 'reasonable prudence,' 'due diligence,' 'reasonable care,' or the like is usually to be determined by the jury under proper instructions." In Phillips v. Denver City Tramway Co., 53 Colo. 458, 128 P. 460, 462, Ann. Cas. 1914 B, 29, the court in stating the rule as to the determination of negligence said: "It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them that the question is ever one of law for the court."

If defendant had encountered the deceased a short distance beyond the crest of the knoll, we should probably have no hesitancy in saying that the question of negligence, if any, was one for the jury. See Farley v. Ventresco, 307 Pa. 441, 161 A. 534, where the motorist was blinded for about two seconds and where the court said that probably few, under like circumstances would have stopped or slackened speed. See to the same effect Kelly v. Irvin, 106 Pa. Super. 329, 163 A. 344. See also 23 Cal. Law Review 499; Sidle v. Baker, supra. In the case at bar the defendant thought that he was blinded only for a moment, since he testified that he was "momentarily" blinded. Ten or eleven seconds intervened between the time he was first blinded and the time that he saw the deceased. That number of seconds,

it is true, pass swiftly, and the human mind perhaps seldom functions perfectly in a crisis of that number of seconds. But whether the defendant was justified in regarding that time as only a moment is doubtful, but perhaps, the point should, at times at least, be left to the jury. In Leonard v. Bottomley, 210 Wis. 411, 245 N.W. 849, defendant drove about 600 feet in dense smoke without slackening speed, and the question of negligence was held one for the jury, although the question as to whether or not defendant was also negligent as a matter of law was not discussed. In Watkins v. Nutting, 17 Cal. (2d) 490, 110 P. (2d) 384, 387, the defendant drove at 50 miles per hour through rain, which obscured his view, and he did not see the person injured until 34 feet from him. The court said: "From these facts the jury could draw the inference that Nutting (defendant) was negligent." In Paul v. Garman, 310 Ill. App. 447, 34 N.E. (2d) 884, 890, the court stated: "Where the driver of an automobile is blinded by the light of another car and continues in his course and strikes a person to whom he owes the duty of exercising reasonable care to avoid injuring him, it is a question for the jury to decide whether the driver of the car was guilty of negligence." In City of Providence v. Young, 227 Ky. 690, 13 S.W. (2d) 1022, 1023, the court stated: "There are cases from sister states that go so far as to hold that when the driver of a motor vehicle is unable to see ahead, he must stop or proceed at his peril. * * * But under our law the standard of ordinary care governs the subject, and when the circumstances are so equivocal that reasonable men may disagree as to the particular duty or course of conduct demanded by the situation, the matter must be determined by the jury." The case of Parenteou v. Parenteau, 51 R.I. 263, 153 A. 872, 874, 875, did not involve any question of contributory negligence. Plaintiff was

riding in defendant's car by invitation. The driver was temporarily blinded by a light, and ran into a tree. Judgment was for defendant, and on appeal, plaintiff claimed that the driver was negligent as a matter of law in not stopping or reducing his speed when blinded by the light. The court stated that: "The speed at which the defendant's car was driven and to what extent speed was a factor in contributing to the accident were questions for the jury." And the court further stated in part: "The presence of blinding lights is only one of the factors to be weighed by the jury along with other circumstances bearing on the general question of negligence. Ordinarily the question of negligence on the part of the driver of an automobile is a question of fact to be determined by the jury under proper instructions as to the commonly accepted standards of due care. The case must be very clear to warrant the court in holding the driver of an automobile to be negligent as a matter of law. Frowd v. Merchbank, 154 Wash. 634, 283 P. 467; Aubin v. Duluth Street Railway Co., 169 Minn. 342, 211 N.W. 580; Denver Alfalfa Milling & Products Co. v. Erickson, 77 Colo. 583, 239 P. 17; Turpie v. Oliver, 21 Alberta L.R. 506. * * * There is no evidence that he knew or should have known of the presence of the tree so near to the shoulder of the road, and we cannot say as a matter of law that he was guilty of negligence in proceeding at a reasonable rate of speed under the conditions. It is a matter of common experience that drivers of automobiles at night have their vision temporarily obscured by the headlights of approaching cars. To hold that, when temporarily blinded by headlights, it is always the duty of the driver of an automobile to stop or to so reduce his speed as to be able to stop instantly would make driving at night on roads where there is any considerable traffic extremely difficult, if not im-

possible. Other traffic conditions permitting, the driver of an automobile whose vision may be temporarily obscured by headlights of an approaching car may pass such car at a reasonable rate of speed without being negligent as a matter of law."

In the case of McBride v. Baggett Transp. Co., 250 Ala. 488, 35 So. (2d) 101, 105, plaintiff recovered a judgment against defendant on account of a collision. It was claimed that plaintiff was guilty of contributory negligence as a matter of law since he was blinded by the lights of an approaching truck, and apparently neither slackened his speed nor stopped. The court refused to say whether plaintiff was guilty of negligence as a matter of law, and stated that his duty was a question for the jury. The court, after quoting from the Florida case of Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 32 A.L.R. 881, stated in part: "But a motorist may assume that others will not negligently park in the highway at night, when the vision of others may be obscured. But this will not absolve him from using reasonable care under the circumstances. 2 Blashfield's Cyc. on Automobile Law, Perm. Ed. § 1227. Many cases hold that it is not the absolute duty of a motorist blinded by the lights of an approaching car at night to stop, but that whether such driver was negligent is a question for the jury, especially when a car is illegally parked ahead of him without proper lights. * * * In the absence of knowledge to the contrary, users of highways may assume that other users will use them in a lawful manner, and until he has such knowledge he is entitled to govern his actions in accordance with that assumption. In such situation, the question is usually for the jury. Sidle v. Baker, 52 Ohio App. 89, 3 N.E. (2d) 537, Jacobs v. Jacobs, 141 La. 272, 74 So. 992."

In Sidle v. Baker, supra, the defendant had to pass over the crest of a hill, as in the case at bar. The court said at page 93: "He was not required to see what could not not be seen by looking. Nor, in the absence of any visible sign of danger, did he owe to the defendant any duty to assume that the defendant would be unlawfully parked on the highway, directly in his path. On the contrary, he had, under such circumstances, a right to assume that all other users of the highway would use it in a lawful manner, and that if it became necessary to stop they would stop in a lawful manner, and park in the manner prescribed by law." In Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 996, the court stated: "The rule is well established in the jurisprudence of this state that a person using a public highway, * * * has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his attention has not been called." See similar in effect Berry, Automobiles (5th Ed.) § 214 and 3 Huddy, Cyc. Automobile Law, § 15. See further cases digested in Decennial Digest under Automobiles, § 245 (47).

In Deichmann v. Gerard, (La. App.) 145 So. 30, the court stated that: "A person using a modern concrete highway in the open country and driving at so reasonable a speed as 20 or 25 miles an hour is justified in assuming and in acting on the assumption that the way is safe for ordinary travel, even at night." That was said in 1932, and the difference in the ordinary speed then and now must be considered. In Biladeau v. Pomerenke, 33 Wash. (2d) 145, 204 P. (2d) 518, one of the syllabi reads: "Where truck driver had no knowledge that highway might be blocked by automobiles stopped alongside highway from place to place ahead of him because of snow removal operations, driver as a pru-

dent man could assume that other drivers ahead of him were complying with rules of the road against blocking the highway."

Probably most, if not all the courts, would agree to the general rule stated in the several cases last cited. But due reflection would seem to indicate that if carried to its logical conclusion it does not harmonize, or at least entirely harmonize, with the rule that when blinded by the elements of nature, a motorist must at all times reduce speed or stop at his peril. However the rules relating to motorists are primarily laid down for the purpose of safety to all. So that the assumptions mentioned cannot be carried to the extent of relieving motorists of the duty of reasonable care. It was said in Ratcliffe v. Speith, 95 Kan. 823, 149 P. 740, 741, that: "They have no right, however, to assume that the way will always be clear and travelers will always be alert to avoid collision." See also Mahone v. Bowman, Tex. Civ. App., 70 S.W. (2d) 323; Murray v. Pearson Appliance Store, supra. Hence it would seem that whether or not a motorist has exercised reasonable care, and was justified in relying on the assumption above mentioned, must generally depend on all the facts and circumstances in a case, and there are doubtless at least some cases in which both factors above mentioned appear, which should be left to the jury. If the collision had occurred in a densely populated area, or in a city or town where it was clearly to be anticipated that there were drivers ahead, then, it would seem, the defendant should perhaps be held guilty as a matter of law. But these were not the facts. Let us turn to them.

The area through which the defendant traveled was not densely populated. He was traveling in an open country at a speed, usual and ordinary at that time and place. It was early in the morning, without much travel on the road to be anticipated at that time and

place. It was not unreasonable for the defendant to think that others who might be ahead of him on the road would be traveling at a reasonable rate of speed. He was not required, within reason, to anticipate that anyone would be driving a car at a speed in violation of the statute, or that anyone would virtually stop in his lane of travel. In Main St. Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S.W. (2d) 665, 668, the court stated: "Speed as a factor of negligence in the operation of an automobile has been rendered of minor importance by common experience and by the removal of an arbitrary miles per hour limit from the statutes. These conditions have relatively increased the degree of negligence and danger involved in the parking of stationary vehicles or other obstructions on the paved surface of a highway. Travelers have become more confident of a free and unobstructed passage ahead on the highways. In these circumstances, we cannot now say with confidence, as a matter of law, that a person of ordinary prudence and caution would have reduced his speed below the rate of 25 miles an hour on approaching the crest of a grade, under the conditions in which petitioners were placed, because the surface of the pavement could not be seen beyond the crest. They had the legal right to expect that an obstruction just beyond the crest would be evidenced by a warning light, and whether they were proceeding negligently was at least a question of fact for the jury." That was said in 1933. Twenty years have passed. Travel in the open country is now at a speed, which we would have called reckless twenty years ago. If it were thought that juries would become reckless in absolving motorists from faults in their method of travel, the courts should perhaps step into correct the situation. But there is no danger of that. This is one of the few cases in which the verdict was for defendant. We have concluded that we should not say, as a matter of law, that the jury

were wrong in holding the defendant not liable herein, particularly in view of the fact that we think that they were justified in concluding that, since the deceased had stopped or was just starting up and evidently traveled slowly, perhaps in violation of the statute, the behavior of the deceased was a contributing factor to the accident herein. We think accordingly that the judgment of the trial court should be affirmed and it is so ordered.

Affirmed.

RINER, J., and HARNSBERGER, J., concur.