[Civ. No. 14115.   First Dist., Div. One.   Dec. 27, 1949.]

AMOS H. ROBINSON, Appellant, v. HOWARD O. KELLY et al., Respondents.

J. Maxwell Peyser for Appellant.

Garth V. Lacey for Respondents.

BRAY, J.—In an action for damages for personal injuries received by the driver of a passenger car in collision with a truck and trailer, the jury brought in a verdict in favor of defendants. Plaintiff appealed from the judgment entered thereon.

QUESTIONS INVOLVED

(1) Alleged insufficiency of the evidence. (2) Alleged error in admission and exclusion of evidence. (3) Alleged error in instructions.

1. *Evidence Sufficient.*

There was a direct conflict in the testimony, particularly that of defendant Shobe, driver of the truck, as opposed to that of plaintiff and his family. The accident took place on the Chittenden Pass Road, which runs generally east and west, between Watsonville and San Juan. At the particular point where the accident occurred the road is in a north-south position, westbound traffic moving northward. At about 7:30 p. m. on January 30, 1948, a dark evening with no fog or rain, plaintiff was proceeding toward Watsonville, driving a 1937 Chrysler containing himself and his wife in the front seat, and two grandchildren in the back seat. At the same time defendants' truck, driven by defendant Shobe, was proceeding from Watsonville toward San Juan. The truck was actually a truck and trailer, attached by a tongue, the whole (including a load of limestone) weighing about 35 tons. Plaintiff was driving at about 30 miles per hour, and the truck was traveling at about 40 miles per hour. Plaintiff at that time did not have a driver's license. (What bearing this had on the accident does not appear.) Although plaintiff, his wife and a grandchild testified that the lights of the truck were bright and that the Chrysler lights were blinking, Shobe testified that the truck's lights were on the low beam and that he did not see the Chrysler lights blinking. Shobe claimed

that the truck at all times was to the right of the center line and that when the two vehicles were about 10 feet apart, the car came directly over and struck the truck. The left front hub cap of the truck and the left front wheel of the Chrysler collided. Plaintiff testified that his car was 2 feet to the right of the center line, and both he and Mrs. Robinson stated that immediately before the impact he pulled farther to the right. His wife and grandchild testified that the car was on its right side of the road and that the truck straddled or crossed the white line and struck the car. Shobe stopped his truck off the highway some distance past the spot of the accident, returned and gave first aid treatment to plaintiff, who was badly injured. (His arm was amputated immediately after arrival at the hospital.) The Chrysler ended up against the bank on its wrong side of the highway. The only actual witnesses of the accident were plaintiff and his family and defendant Shobe. Highway Patrolman Gibson, who arrived there shortly after the accident, found a wide mark on the road which he said (without objection) was made by the rim of the left front wheel of the Chrysler (the tire was flattened in the collision). This mark began 3½ inches to the left of the center line (facing in the direction the Chrysler was going) and ran in an unbroken line to the left front wheel of the wrecked car. He also found broken glass and debris lying on both sides of the center line. On cross-examination he was asked his opinion of where the point of impact was. He placed it at a point on the map which would indicate that the left front of the Chrysler was over the center line at the time of impact. Defendants called one McPike, an "independent investigator" who inspected the scene early the next morning. He found a gouge mark in the pavement directly on the center line, also one 3¾ inches from the center line on the Chrysler side of the road, which ran to the place where the Chrysler had stopped after the accident. This mark, in his opinion, was caused by the broken spring set of the A-frame of the car. Patrolman Gibson also testified that the night of the accident Mrs. Robinson stated to him that she was blinded by the truck lights and did not know what part of the road the car was on. She denied making such statement.

So far as the sufficiency of the evidence is concerned, the testimony of defendant Shobe alone, if believed by the jury (and it evidently was), was sufficient to sustain the verdict. Moreover, the testimony of the witnesses Gibson and McPike

corroborated him, while the testimony of plaintiff and the members of his family was substantially uncorroborated.

2. *Alleged Error in Admission and Exclusion of Evidence.*

■ Mrs. Robinson went with her son, Edgar Robinson, to the scene of the accident the next morning. He testified that she pointed out to him the two gouge marks in the highway. He was then shown a photograph, "Plaintiff's Exhibit 7," and was asked whether the gouge mark on the right side of the center line showed in the photograph. Thereupon defendants objected that he was "only testifying as to what somebody showed him." The court then asked him questions which elicited the fact that the time he was there was before noon. The following then occurred: "Q. And all you are testifying to now is the result of an investigation with your mother? A. Not exactly, sir. Q. What else? A. There was the glass. Q. She showed you the glass? A. Yes, sir. Q. And she pointed out the indentation on the highway? A. Yes. Q. And that is what your testimony consists of? Mr. Peyser [counsel for plaintiff]: And I am going—— The Court: You have corroborated it two or three times. The objection is sustained." There was no error under the circumstances of the case in the court declining to permit further testimony concerning the location of the glass and the gouge marks. There was introduced in evidence a map (plaintiff's Exhibit 8) made by a surveyor on which was printed the legend "Location of Glass as Indicated by Mrs. Robinson" and a mark showing it to be on the center line. The "Gouge Marks on Pavement" as well as the "Location of Glass" were drawn on the map by the surveyor after they were pointed out to him on the ground by Mrs. Robinson. Patrolman Gibson located the mark which he saw that night as commencing with one of these gouge marks. McPike adopted the gouge marks on the map as those seen by him the next day, although he testified to an additional mark 3 feet to the right of these marks. Therefore, there was no dispute as to the location of both the glass and the two gouge marks. Having the son again locate them as pointed out to him by his mother would have added nothing to the case, even though the court allowed McPike to testify to these marks, as well as others, found by him the next day.

■ Plaintiff objects to the admission of "the testimony of the so-called investigator Beldon McPike. (R. T. 182 to 189, lines 1-19.)" An examination of this reference to the transcript discloses McPike was under cross-examination by plain-

tiff from pages 182 to the bottom of page 187. How plaintiff can attack the testimony which he brought out himself does not appear. On page 188, defendants asked McPike the relation of the A-frame to the gouge marks and the witness explained his theory at some length. Then the following occurred. McPike had just stated: "Those marks were 3 feet to the center line. The left wheels of that car, when the right wheels were 3 feet from the center line, the left wheels must have been 1 foot, 10 inches"; and plaintiff's counsel stated: "I'll ask counsel not to ask the witness any questions as to that. When I asked him about that he said he didn't know and I said, 'Well you are an expert,' and he said, 'I am.'" The court did not err in overruling this type of objection.

Plaintiff complains that the court overruled plaintiff's objections as shown in Reporter's Transcript 181, 24-26; 183, 4-13. An examination of the transcript at the designated pages shows no objections having been made. Later, on two occasions defendants asked McPike's opinion as to what part of the A-frame caused the gouge marks. Plaintiff objected on the ground that the witness was not qualified as a mechanical expert. The objections were overruled. McPike had previously testified without objection as an expert as to the fact that the gouge and other marks showed where the car traveled after the accident "and bolted over to the bank," and given his opinion as to whether the Chrysler was ever in a spot where a witness named Rose claimed it was. He was asked whether from his experience he would say that the collision between the car and the heavy truck would affect the car in a certain way. An objection by plaintiff was sustained, the court stating that McPike was not an expert. He was then asked the number of automobile accidents he had investigated in his 32 years of investigation, and he answered "a number of thousand of them." He was then asked if he was qualified to say, in his "experience as an expert investigator" what would be the effect of two machines striking each other from opposite directions. No objection was made to this and similar questions, all of which he answered. Plaintiff then brought out on recross-examination that the witness had had certain experience in repairing automobiles in an automobile shop, and also a year and a half prior had fitted an A-frame in his own car. At great length plaintiff interrogated him concerning whether the gouge mark was caused by the rim or tire of the Chrysler, or its A-frame. (The witness had not seen the car; only the

photographs of it in its damaged condition.) Plaintiff inter-rogated him at great length concerning all the marks which McPike found at the scene of the accident and how they got there. All this had occurred before plaintiff objected. McPike testified without objection on several subjects as to which it is questionable if they were the subject of expert testimony, or if they were whether he had qualified as an expert. However, on this subject of the type of mark an A-frame would make, he showed sufficient qualification to make his opinion admissi-ble. In any event, plaintiff had previously examined him at length upon the subject; hence his objection came too late. Plaintiff stresses the fact that on two occasions the court stated that McPike was not an expert. This fact would not help him in view of his failure to make timely objection. Moreover, the first time the court made such statement was with reference to the physical effect of two machines meeting, and thereafter the witness's qualifications were given and plaintiff made no objection to his testifying on the very subject to which the court was referring. The second instance was when the court was referring to the fact that McPike was not an expert on mental condition, and has nothing to do with his opinion on mechanical matters.

McPike testified to his own observation of the contour of the road. Later, he was asked to "describe the contour" with relation to this diagram. Plaintiff objected on the ground that it had already been asked and answered on direct examination. The court overruled the objection, stating, "The court is not quite clear as to the testimony that has been given."
■ Allowing a witness to repeat some of his testimony is a matter entirely in the discretion of the trial court. The witness then pointed to the map and started to describe the contour of the road, and said, "It rises about 7 feet, and you come over the crest and settle down to about a 3 or 4-foot grade, and then you come to a long piece of level—— (No more of answer given)." Plaintiff interrupted, objecting that the witness was not qualified as engineer or otherwise to testify to grades. The court sustained the objection. Then discussion followed, and the court said "Proceed." Defendants' counsel stated that he was not asking him as an expert on grades and then asked him if he could tell about the up and down contour of the road. No objection was made. The witness then proceeded to describe the fact that the road had "small rises and small dips" and the distances between. There was no error here.

## INSTRUCTIONS

■ The court gave section 525 of the Vehicle Code which provides that a vehicle shall be driven upon the right half of roadways of sufficient width, except under certain conditions therein set forth (defendants' instruction 1), and defendants' instruction 8 to the effect that if plaintiff violated that section it would be negligence as a matter of law and if such negligence was the proximate cause of the accident, the verdict should be for defendants. Plaintiff's objection to this instruction is that the court should have told the jury that in addition to the exceptions set forth in the act, there may be situations in which it is not necessarily negligence to drive on the left side of the highway, citing *Finney* v. *Wierman*, 52 Cal. App.2d 282 [126 P.2d 143], and other cases where there was evidence showing good reason for the car being out of its own lane. For example, in the Finney case the plaintiff testified she left her lane for the purpose of avoiding a collision with defendant's car. The rule of those cases is not applicable here. Plaintiff and his witnesses contended that he at no time left his own side of the highway. Either this was true, or he was on the wrong side of the road. The jury did not believe that he was on his own side of the road, and as he attempted no excuse for being on the wrong side, he was negligent as a matter of law in crossing the center line. Justifiable crossing of the line was not an issue in the case. These instructions, therefore, under the circumstances of this case, were proper.

■ The court gave an instruction on unavoidable accident (defendants' instruction 17). Plaintiff contends that this instruction told the jury that it must find a verdict for defendants regardless of any act of negligence on the part of defendants. This contention overlooks that portion of the instruction which reads, referring to the terms "unavoidable or inevitable accident," "They simply denote an accident that occurred without having been proximately caused by negligence."

■ Defendants' instruction 14, after stating that a driver must anticipate the presence of other drivers and keep his car under such control as will enable him to avoid a collision with another person using proper care, then stated that this duty is not lessened if the driver is blinded by the headlights of an approaching car, and if blinded is required to "stop, or slacken his speed, or place himself in a position from which he could see the road over which he was driving. If you find

that the plaintiff was blinded by lights of defendant's truck and that he drove across the center of the highway as a result thereof, and that his injuries were occasioned as a proximate result thereof, and that the *defendant was free of negligence"* the verdict should be for defendants. This instruction is based on the rule set forth in *Meads* v. *Deener*, 128 Cal.App. 328 [17 P.2d 198]. The emphasis is that of plaintiff's opening brief in which he contends that by including this line in the instruction, the court suggested to the jury that they might find (a) that plaintiff was blinded and failed to use due care, and (b) that defendants were free from negligence. Plaintiff argues that the jury could not reasonably have made both findings, because plaintiff could only have been blinded if Shobe was using his bright, long-range lights, contrary to Shobe's own testimony. Plaintiff contends that "dimmers could not possibly be blinding." However, that is not so self-evident that we may take judicial notice of it or hold as a matter of law that a driver cannot be blinded by a truck's normal lights on a dark night.

There was testimony to justify the instruction given. McPike testified that plaintiff had stated that he was blinded by the truck lights, and that he could not see the center line. Although plaintiff denied making such statement and insisted that he was not blinded by the lights, it was for the jury to decide whether in the light of such admission (if the jury found he made it) the proximate cause of the accident was plaintiff's failure to meet the standard of care set forth in the instruction.

■ Plaintiff contends that in view of the fact that the court gave instructions on contributory negligence it had no right to give other instructions requiring the jury to find defendants guilty of negligence before awarding a judgment against them. The doctrine of contributory negligence assumes that defendants were negligent, says plaintiff, and therefore the giving of instructions on the subject was a finding that defendants were negligent. Plaintiff even goes to the extent of claiming that the testimony of Shobe must be completely disregarded because by pleading this defense and having the court instruct on it, defendants admit their negligence. Such is not the effect of that defense. It is a defense which a defendant has the right to raise in addition to that of denial of negligence. The effect of the instructions is that if the jury finds the defendants negligent and that such negligence was a proximate cause of the accident, it then must determine if

plaintiff was also negligent, and if so, whether his negligence was also a proximate cause of the accident. Giving instructions on contributory negligence was proper.

In his criticism of the instructions given, plaintiff regards most of them as isolated instructions without considering that each instruction must be regarded in relation to the other instructions. As said in *Megee* v. *Fasulis*, 65 Cal.App.2d 94, at page 99 [150 P.2d 281] : "It is not necessary that each instruction embody every fact or element essential to sustain or defeat an action or that it cover the entire case. It is sufficient if the instructions, as a whole, substantially and correctly cover the law applicable to the issues."

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.