**Verna E. DAVIS, Administratrix of the Estate of Robert F. Davis, Deceased, Respondent,**

v.

**ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation, Appellant.**

No. 46130.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1957.

Rehearing Denied Dec. 9, 1957.

Norris H. Allen, William B. Anderson, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for appellant.

Sherman Landau, St. Louis, for respondent.

HOLLINGSWORTH, Presiding Judge.

Robert F. Davis was fatally injured when an automobile driven by him struck the side of defendant's freight train at the crossing of defendant's railroad over Illinois State Highway No. 159 near the City of Edwardsville, Illinois. Plaintiff, Verna E. Davis, as administratrix of the estate of her deceased husband, instituted this action to recover the sum of $20,000 for his wrongful death. The petition, after pleading due care on the part of deceased, alleged that

the collision and his death were directly caused by the negligent failure of defendant to keep flasher lights maintained by it at the crossing in working condition. Defendant denied the allegations of the petition and further pleaded that the death of plaintiff's husband was caused in whole or in part by his negligent failure to maintain a lookout for the presence of the train upon the crossing. The case has been twice tried to a jury. The first trial resulted in a verdict and judgment for defendant, from which plaintiff appealed to this court, where the judgment was reversed and the cause remanded for a new trial. See Davis v. Illinois Terminal Railroad Company, Mo., 291 S.W.2d 891.

The instant trial resulted in a verdict and judgment for plaintiff in the sum of $20,000. Defendant has appealed, contending that reversible error was committed by the trial court in refusing to admit into evidence certain photographs of decedent's wrecked automobile and the wreckage collected therefrom at the scene of the collision; in permitting plaintiff's counsel to make improper remarks in his closing argument; and that the "verdict is the result of passion and prejudice on the part of the jury and sharp practices on the part of the plaintiff's counsel and an emotional outburst on the part of plaintiff, all of which was calculated to and did deprive defendant of a fair trial, * * *." Defendant also contends, as it contended on the former appeal, that plaintiff did not prove decedent's due care, as required by the law of Illinois, and that the evidence shows decedent to have been guilty of contributory negligence as a matter of law.

The evidence at the instant trial, with insignificant exceptions, is conceded to be substantially the same as that set forth in the opinion rendered on the first appeal, to which reference is made. A brief summary will suffice for an understanding of the questions presented on this appeal.

Plaintiff's evidence tended to show that, at the direction of the Illinois Commerce Commission, defendant, since 1936, was required to maintain in good working order during all hours of day and night flasher lights at said crossing; that said lights were so designed as to flash red warning signals to travelers on the highway when any train approached and entered upon the crossing and to continue to flash such signals until the train had completely cleared the crossing; that plaintiff's husband was familiar with said crossing and the operation of said lights; that at about 1:15 a. m., on September 19, 1954, as defendant's westbound train stood upon the railroad track over the crossing, decedent drove his northbound automobile into it with such force as to fatally injure him; and that the flasher lights were not in operation at that time.

On the other hand, defendant's evidence tended to show that the flasher lights were in operation as the train approached, entered upon, stopped and remained upon the crossing; that for a distance of 1,000 feet or more south of the track Highway 159 was straight and that a traveler approaching from the south had an unobstructed view thereof and plainly could see the lights in operation; that after the train had stood upon the track for one and one-half minutes, with the eleventh boxcar from the front end of the train across the highway and the remaining boxcars, some 26 of them, on the track to the east of the crossing, it began a slowly backing movement, at which time decedent drove his automobile into the approximate center of the boxcar then across the highway with such speed and violence as to force the front part of the automobile under the boxcar, thereby damaging the braking apparatus of the latter and causing an automatic application of the brakes, stopping the train within a few feet; and that the force of the collision was such as to demolish the automobile, tear its motor from the chassis and leave it beneath the train.

On the first appeal, we gave extended and careful consideration to defendant's

contention that plaintiff had not made a submissible issue of due care on the part of her decedent and that plaintiff's evidence showed decedent to be guilty of contributory negligence as a matter of law. A further review of the additional authorities cited by defendant on this appeal, the cases cited in our first opinion and the conclusions therein reached leaves us convinced that plaintiff made a submissible case under the law of Illinois. We, therefore, adhere to the ruling there made on that question.

■ We now consider defendant's assignment that the court prejudicially erred in refusing to admit into evidence two photographs, Defendant's Exhibits D and E, showing the violence done to decedent's automobile when it collided with the boxcar. It is defendant's contention that such photographs reveal that when decedent drove his automobile into the side of the train he was traveling at such a high rate of speed as of itself bespeaks his negligent failure to maintain a proper lookout; and that the photographs more accurately portray the fact of the speed of his automobile than any other available evidence.

As above stated, Highway 159 is straight and substantially level for a distance of at least 1,000 feet immediately south of the crossing and the view of a traveler approaching from the south is completely unobstructed. Defendant's Exhibit F, here reproduced, establishes those facts:

It is apparent from an examination of Exhibit F and defendant's evidence tending to show a violent impact of decedent's automobile with the boxcar that the jury reasonably could find that decedent had approached and entered upon the crossing at a high rate of speed without maintaining a proper lookout for his own safety. The record further shows that plaintiff's counsel was fully aware of that possibility and his effort to avert it has a direct bearing upon the materiality of any evidence tending to show the force with which decedent's car struck the train. (A better understanding of the import of the record hereinafter set forth will be had if it be borne in mind

that the only curve in the highway in the immediate vicinity of the crossing is the one about 50 feet *north* thereof, and that a road sign situate on the highway several hundred feet south of the crossing directs attention of northbound travelers to that curve and fixes a speed limit of 45 miles per hour.)

In his opening statement, plaintiff's counsel told the jury that "the highway curves at the point *where the tracks pass over it* * * *."" On direct examination of witness Clarence Brown, plaintiff's counsel presented to him a photograph showing a view of the highway with the camera pointed northward toward the railroad track, *in* which picture was also shown the aforesaid highway road sign whereupon he interrogated the witness and received the answers following:

> "Q. In the course of qualifying for your driver's license, did you learn the meaning of this particular highway sign shown on that photograph? A. Yes, sir.
>
> "Q. And will you please tell us what it signifies? A. Curve.
>
> \* \* \* \* \* \*
>
> "Q. I'll ask you to state whether or not that sign, that is the arrow and the forty-five miles per hour, were up there in September of 1954, and in the position where shown on that photograph? A. Yes, sir.
>
> \* \* \* \* \* \*
>
> "Q. What is the distance, how far is that sign from the tracks, from the rail? A. Approximately four hundred fifty to five hundred feet."
>
> \* \* \* \* \* \*
>
> "Q. Thank you, sir. Now, what is the condition of the highway with reference to the place where the rails pass over it? Will you please state whether the highway is straight or whether there is a curve? A. *There is a curve there.*"

But, on cross-examination, the following interrogatories and answers were propounded to and given by the witness:

> "Q. I will show you Defendant's Exhibit F. Does that show that highway in Edwardsville as to where the deceased was going? A. Yes, sir.
>
> "Q. That highway is straight as a die up in here? (Indicating) A. Yes, sir.
>
> "Q. In other words, if the deceased was a thousand feet from that crossing, heading in the direction of the crossing, in the way he was going, and a freight train or boxcar was across that crossing it would have been right dead ahead in his line of vision, wouldn't it? A. Yes, sir.
>
> "Q. And the curve on that highway is many hundreds of feet further in the direction he'd already gone, isn't it? A. There is also another curve.
>
> "Q. Another curve on the other side of the track? A. Yes, sir.
>
> "Q. But he hadn't got to that curve— A. No, he didn't hit that curve.
>
> "Q. —when he hit the freight train? A. That's right.
>
> "Q. How many feet is that road straight ahead there in the direction from which he was traveling down toward the railroad track, would it be a thousand feet, you think, fifteen hundred? A. Approximately."

Despite the testimony of plaintiff's own witness, as above set forth, her counsel in closing argument insisted:

> "Whether there was or was not a curve doesn't excuse them from failing to keep those lights operating, that doesn't serve as any excuse at all. Now, in trying to dispute that they

show you these pictures taken by a professional photographer, on the day after the accident, before Bob Davis had even been put away, they had the photographer out there, and he was a professional, he took these pictures, every one of them, from the center of the road, notice that he knew what he was doing, he knew how to take them so as to make that road seem level, *straight and clear, and yet he knew if he would take a picture from the side of the road it would show the curve of the road,* and it would show the raise in that highway." (Emphasis ours.)

And, with reference to the cause of the damage done to decedent's automobile, plaintiff's counsel, in his opening statement, said:

"—the front part of his automobile ran between two boxcars, as the front part got in between two boxcars so that the trucks of one of the cars crushed the front part of his automobile and dragged it along and knocked him out of the automobile. * * * Mr. Davis ran in the front end of his automobile in between these two cars, and then was caught by the backward movement of the train, and dragged approximately twenty or twenty-five feet before the train came to a stop; and the train ground the metal from the front part of his automobile underneath the wheels of the train, * *."

A careful search of the record fails to reveal any evidence to support the statement of plaintiff's counsel that decedent's automobile ran between two boxcars.

Under the circumstances above set forth, it is clear that any photograph properly shown to throw light upon the rate of speed at which decedent's automobile was being driven when it struck the train is peculiarly material.

The photographs in question were taken on the day of the collision and after the wrecked automobile and its scattered wreckage had been collected and taken to a junk yard. Defendant first undertook to make use of them in the cross-examination of plaintiff's witness Mayfield, but the court ruled they were not material to the matter concerning which the witness was then being interrogated, to wit: the precise location of various pieces of the wreckage at the scene of the collision. Thereafter, defendant's brakeman, Evan M. DePoister, testified in detail as to the scene that confronted him when he came from the head end of the train back to the crossing immediately following the collision. He said he found a lot of debris on the highway in the middle of the track under the boxcar.

"Q. All right. Now, did anybody shovel up any of the debris off the track? A. I did.

"Q. With what? A. Well, it was round ditching shovel that I got off the wrecker that come out to pick up the car.

"Q. I see. With the understanding that a pile of automobile parts is not the picture—is not taken at the scene of the accident, will you look at Defendant's Exhibit E, and tell us whether or not that is a fair representation of the pile of loose automobile parts that you saw there at the accident? A. Yes, that looks like the parts of the car.

"Q. And with a further understanding that this picture, Exhibit D, Defendant's Exhibit D, is not taken at the scene, is (does?) this fairly represent the condition of the rest of the automobile without the engine, and without those pile of parts in it? A. Yes, it looks like the same car.

*    *    *    *    *    *

"Q. If the Court please, I would like to offer in evidence Defendant's Exhibits D and E, and I would like to pass them to the jury.

"Mr. Landau: We object to them for the reason they have no probative value, that they do not aid or assist the jury, and that they do not purport to be fair and accurate representations of the scene at the crossing.

\*     \*     \*     \*     \*     \*

"The Court: They will be excluded."

Plaintiff insists that the trial court did not abuse its discretion in excluding the exhibits, "as they were irrelevant and without probative value", citing in support of her contention Hutchison v. Moerschel Products Co., 234 Mo.App. 518, 133 S.W.2d 701; Philippi v. New York, C. & St. L. R. Co., Mo.App., 136 S.W.2d 339; and Gignoux v. St. Louis Public Service Co., Mo. App., 180 S.W.2d 784, 786–787. None of these cases is in point. In the Hutchison and Philippi cases, the trial court had admitted certain photographs and the appellate court merely held that there was no showing that it had abused its discretion in so doing. In the Gignoux case, the trial court had admitted a photograph, of which the Court of Appeals said, 180 S.W.2d loc. cit. 786: "Instead of clarifying the matter, it brought confusion into the case. Such testimony, which tends to confuse rather than aid the jury, should be excluded."

█ It has long been held that photographs are admissible in evidence even though taken long after the event and when changes have occurred, if the changes are explained, and, when so explained, the photographs reasonably may aid the jury in arriving at an understanding of a fact or facts that have a direct bearing upon the issues. In Weisbrod v. Mueller, Mo.App., 285 S.W. 542, 543 [2], the St. Louis Court of Appeals, in considering the admissibility of a photograph of a demolished automobile, said: "Such photograph was expressly offered and admitted for the purpose of showing the location in which plaintiff's automobile was struck and the violence of the collision. For such purpose the photograph was competent, inasmuch as plain-

tiff and her husband had both testified in respect to the matter. Young v. Dunlap, 195 Mo.App. 119, 190 S.W. 1041." In State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 107 [26–28], this court cited with approval the case of Young v. Dunlap, 195 Mo.App. 119, 190 S.W. 1041, 1044 [10], wherein it was said of a photograph of an automobile involved in that case: "The reason assigned here to justify the exclusion of this evidence is that the machine was not in the same condition when the picture was taken as it was immediately after the collision. There were some changes made necessary to get the machine home, but these points of difference could be made the basis for cross-examination, thus enabling the jury to give proper weight to the evidence." See also: Reed v. Coleman, Mo.App., 167 S.W.2d 125, 133; Brock v. Gulf, Mobile & Ohio Railroad Company, Mo., 270 S.W. 2d 827, 833 [9–11].

As stated in our first opinion, 291 S.W.2d 891, 894, these exhibits strikingly reveal that the "automobile was so broken and torn apart that when the parts were assembled they constituted a pile of junk." We are constrained to hold that the photographs were material and competent evidence and that the trial court prejudicially erred in refusing to admit them.

Finally, defendant charges that throughout the trial plaintiff's counsel was guilty of persistent distortion of facts, the deliberate injection of prejudicially extraneous matters and false issues, and the ostentatious proffer of witnesses whose testimony he knew would be excluded; that because of such conduct, coupled with an allegedly simulated emotional outburst on the part of plaintiff during the closing argument, this court should reverse the judgment under our Rule 3.27, 42 V.A.M.S. providing that, in the discretion of the court, plain errors affecting substantial rights, though not raised in the trial, may be considered on appeal when the court deems that manifest injustice has resulted.

Defendant has set forth in its brief forty specific instances of such alleged misconduct. The nature and extent of the alleged emotional outburst of plaintiff is not shown by the record, but the record does show that it caused the trial court to state: "Take her out of the courtroom, Mr. Sheriff, if you don't, I'm going to find a place to put her." In view of our conclusion that the judgment must be reversed and the cause remanded for the reasons hereinabove stated, we need not rule these matters. It would seem that the experience gained by counsel for both parties at two former trials would so clarify the issues of fact and law as to eliminate from a future trial any element of surprise, confusion over the admissibility of evidence, excuse for introduction of extraneous matters or issues into the case, or the development of any emotional demonstration on the part of plaintiff.

The judgment is reversed and the cause remanded.

All concur.