Clarence PHILLIPS and Nellie Phillips, Plaintiffs-Respondents,

v.

Roy C. STOCKMAN and Fred A. Stockman, Defendants-Appellants.

No. 7958.

Springfield Court of Appeals.

Missouri.

Nov. 15, 1961.

Keyes, Bushman & Hearne, Jefferson City, for defendants-appellants.

Bond & Dominique, Jefferson City, for plaintiffs-respondents.

STONE, Presiding Judge.

Harold Dean Phillips, then twelve years of age, suffered fatal injuries about 4:30 P.M. on November 8, 1958, when thrown from a 1956 Chevrolet sedan (hereinafter referred to as the Phillips automobile), then being driven by his mother, Mrs. Nellie Phillips, on Callaway County Route D approximately two miles west of Mokane, Missouri. In this jury-tried action for damages on account of Harold's death, his parents obtained a verdict for $12,000 against both defendants, who appeal from the judgment entered thereon.

At and near the point of accident, Route D ran in a general easterly-and-westerly direction and was practically level; and, for a distance of not less than one-half mile to the east (that being the direction from which all of the vehicles figuring in this tragedy approached the point of accident), the road also was straight. There was "very little" shoulder between the north edge of the blacktop and the "fair-sized ditch" on that side of the road. At the time of accident, the setting sun was low in the heavens and (as we shall detail) in varying degree bothered some westbound drivers on Route D. Since the time of the setting of the sun is within the storehouse of our judicial knowledge [Haley v. Edwards, Mo., 276 S.W.2d 153, 161(12); McGowan v. Wells, 324 Mo. 652, 658, 24 S.W.2d 633, 635(1); State v. Powell, Mo., 306 S.W.2d 531, 533(2), 66 A.L.R.2d 1141], we record that, on November 8, 1958, the sun set about 5:00 P.M. at the place of accident.

Defendants, Roy C. Stockman and Fred A. Stockman, are father and son, respectively. Roy, with son Fred, then twenty-six years old, and another son Francis (not a defendant herein), then twenty-one years old, had been working that day on Roy's farm near Steedman, a few miles east of the place of accident. Fred testified that, in the operation of that farm, he and his father, Roy, were partners. Between 4:00 and 4:15 P.M., Fred and his brother, Francis, left the farm in a 1951 Chevrolet two-ton truck with grain bed and stock rack (hereinafter referred to as the stalled truck) owned by Roy and, with Fred driving, proceeded west on Route D en route to the Stockman family home near Wardsville. As Fred and Francis neared the place of accident, the truck motor "started to miss and, just like that, it quit." Fred (in his words) "pulled over to the (right-hand or north) side of the road as far as I could go" without driving into the ditch. Plaintiffs' witness, Andrew Taylor (the only other witness on this subject) agreed that the stalled truck was "as far off the paved surface as it could be got without being put into the ditch," and plaintiffs have not charged any violation of the statutory requirement that "(a)ll vehicles not in motion shall be placed with their right side as near the right-hand side of the highway as practicable." V.A.M.S. § 304.015(1). In the absence of any statement or estimate as to what portion of the stalled truck remained on the blacktop, we are informed only that the truck was "partially" thereon.

When the truck stopped, Fred "got out right away and raised the hood and just looked in" when the right front door of a westbound 1958 Ford sedan driven by Andrew Taylor sideswiped the outside left rear dual tire on the stalled truck. Taylor continued to the west on Route D for "a block or two maybe," turned around, drove back and "stopped at the (stalled) truck." As, upon trial, he related the conversation, Taylor inquired, "what did I do to the truck"; and, when Fred and Francis "said they didn't know" and made a reciprocal inquiry, "what did it do to your car," Taylor responded, "I don't know; let's look." So, Taylor and Fred "drove down the road" to the east for a short distance (estimated by Taylor at 250 to 300 feet and by Fred at 150 to 200 feet), where Taylor stopped, still

headed east, and he and Fred alighted to inspect the right side of the Taylor automobile. As they made this inspection, they were standing either *in* the ditch, two to three feet deep, on the south side of Route D (as Taylor testified) or *alongside* of that ditch (as Fred remembered it). In either event, they were on the south side of the stationary Taylor automobile. While engaged in inspection of that side of his automobile, Taylor told Fred that he (Taylor) had sideswiped the stalled truck because he had been blinded by the sun. As Taylor made that statement to Fred, two westbound vehicles were approaching from the east on Route D, towit, (1) the Phillips automobile driven by plaintiff Nellie, then about three hundred feet east of the Taylor automobile and traveling at a speed estimated by Nellie at thirty-five miles per hour and by Fred at forty to fifty miles per hour, and (2) a 1958 Chevrolet pickup (hereinafter referred to as the pickup) driven by defendant Roy, then about two hundred feet behind or east of the Phillips automobile (and thus about five hundred feet east of the Taylor automobile) and traveling about the same rate of speed as the Phillips automobile. Neither Taylor nor defendant Fred called or waved either to plaintiff Nellie or to defendant Roy.

To this stage of our factual review, we encounter no material or important dispute; but, as to what subsequently occurred, the record reflects two diametrically opposed, utterly irreconcilable versions. We first outline *plaintiff Nellie's version.* She was en route from Mokane to her farm home with three children riding in the Phillips automobile, i. e., Harold on the right side and Linda in the center of the front seat and Danny in the back seat. "Most of the time" she wore eyeglasses (such as she was wearing at the time of trial) when she drove an automobile; but, before leaving Mokane on this occasion, she removed her eyeglasses, placed them in her dress pocket, and put on sunglasses, described as having a "white frame with blue lenses." She first saw the stalled truck

"quite a ways down the road." At that time, she did not know whether it was moving; but, as she came "closer," she learned that "it was stopped." In the meantime, she also had become aware that the westbound pickup (driven by defendant Roy) was behind her. "I seen it about half a mile down the road on the straight stretch there. I knowed it was coming behind * * * half a mile behind me." By the time she was one hundred feet from the stalled truck, the pickup traveling about fifty miles per hour was about one hundred feet behind her. As she "approached" the stalled truck, she slackened the speed of the Phillips automobile (whether by application of brakes or simply by lifting her foot from the accelerator she did not say) so that, when it was twenty feet from the stalled truck, she was traveling about twenty miles per hour. There being no approaching eastbound traffic on Route D, she "started to go around—I give myself plenty of room to go around this (stalled) truck—and something (the pickup) hit me in the rear of (my) car." This *initial* impact, which "seemed like" it was to "the left bumper," was "pretty hard" or "severe," cast plaintiff Nellie "up against the steering wheel," and threw the Phillips automobile into the stalled truck. As a result of the *second* impact, i. e., the impact between the right side of the Phillips automobile and the left rear portion of the stalled truck, both Nellie and her son, Harold, were thrown from the automobile onto the blacktop roadway and the boy suffered the grievous injuries of which he died. Positively and repeatedly, plaintiff Nellie testified that the impact of the pickup upon the rear end of the Phillips automobile "threw" or "flung" it into the stalled truck, and that otherwise she would have cleared the stalled truck safely. Thus ran plaintiff Nellie's testimony.

The other evidentiary picture was developed by defendants Roy and Fred and *plaintiffs'* witness Taylor. Defendant Roy left his farm in the pickup some ten to fifteen minutes after his sons, Fred and Francis, and likewise proceeded west over

Route D en route to the Stockman family home. After the Phillips automobile turned west from a north-and-south road onto Route D in front of the westbound pickup, plaintiff Nellie drove the Phillips automobile at a speed of forty to fifty miles per hour and Roy followed at practically the same rate of speed and at a distance of about one hundred fifty feet (as he estimated it) or two hundred feet (as Fred thought). The setting sun "was glaring" in Roy's eyes and "was bothering" him; and, with no sunglasses, "I (Roy) was using (the Phillips automobile) as a blind against the sun"—"I was following this car and using it as a guide." However, Roy insisted that he could "clearly see" the Phillips automobile. Both defendants and plaintiffs' witness Taylor substantially agreed that, as the Phillips automobile approached the stalled truck, there was no perceptible slackening in its speed or discernible change in its course; that the *initial* impact was between the right side of the Phillips automobile and the left rear portion of the stalled truck; that, as a result of this initial impact, the stalled truck was knocked into the ditch and the rear end of the Phillips automobile swung clockwise to the south with that vehicle coming to rest crosswise of the blacktop roadway; that defendant Roy applied the brakes and skidded the wheels of the following pickup, leaving skidmarks (so Roy said) thirty-three feet in length; and that a *second* impact occurred when the front end of the pickup, then moving "very slow" or "about ten miles an hour," ran into the right side of the Phillips automobile, then standing crosswise of the blacktop. Other pertinent facts will be noted in connection with our discussion of the legal problems involved.

Defendants' first contention is that they were entitled to a directed verdict because "plaintiffs' own testimony and evidence destroyed their theory of the case," which followed plaintiff Nellie's version of the accident. This contention depends upon the alleged conclusive effect of four photographs of the Phillips automobile, identified as defendants' exhibits during the cross-examination of plaintiff Clarence (plaintiff Nellie's husband and Harold's father), conceded by him to be "pretty good" or "fair" representations of the condition of the Phillips automobile after the accident, and received in evidence without objection. The argument of defendants' counsel follows the line that these photographs, for which plaintiff Clarence vouched and by which both plaintiffs are bound (so counsel assert), indisputably establish certain "physical facts," towit, "extreme violence and rending damage to the right front end and side" but "no damage to the rear end of the Phillips automobile, and particularly none to the left rear bumper"; and that, therefore, these photographs render plaintiff Nellie's "account of the accident inherently impossible, opposed to all reasonable probability," because "it is beyond credence" that the pickup driven by defendant Roy could have struck the rear end of the Phillips automobile and could have thrown that vehicle into the stalled truck with sufficient force to have resulted in the "rending damage" to the right front portion and right side, "without causing and producing plainly visible crushing damage to the left rear bumper and rear end of the Phillips automobile."

The photographs under consideration do not reflect that character of damage to the rear end of the Phillips automobile, but they do reveal two dents or creases in the trunk lid and indicate that the trunk lid had been sprung. Although no damage to the rear bumper is shown affirmatively, none of the photographs were taken at such angle as to reveal whether the bumper was out of normal position or alignment. Plaintiff Clarence testified that "the left back bumper had that white enamel knocked off of it * * * it looked like where something had hit it and kinda scraped sideways, the way I'd figure it out." Absent any evidence as to the weight, thickness or strength of the rear bumper or as to its

attachment to the frame, we would be engaging in sheer speculation, idle surmise and forbidden conjecture if we undertook to determine as a matter of law that the initial impact, if it occurred as plaintiff Nellie testified, would have caused "plainly visible crushing damage to the left rear bumper and rear end of the Phillips automobile."

 Under plaintiffs' theory of the case, the initial impact was between two moving vehicles, i. e., between (1) the Phillips automobile which had "started to go around" the stalled truck and (2) the pickup which (as defendant Roy testified and as plaintiffs' counsel concede in their brief) had skidded more than thirty feet on dry pavement before the impact. Our courts repeatedly have warned that "so frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable

that no room is left for the entertainment, by reasonable minds, of any other."[1] Although the photographs under scrutiny undoubtedly constituted competent evidence[2] and tended strongly to prove that the accident did not occur as plaintiff Nellie said, they did not establish indisputably physical facts which would permit us as a matter of law to reject her account as "inherently impossible" and "beyond credence."[3] The credit or weight to be accorded to photographs as evidence usually is for the jury,[4] and " 'there is no rule which permits appellate courts to disturb a jury's findings because highly convincing photographic evidence may seem to overbalance the parol or other evidence to the contrary.' " Ruhl v. Missouri Pac. R. Co., Mo., 304 S.W.2d 16, 18; Schaefer v. Arkansas Valley Interurban Ry. Co., 104 Kan. 394, 179 P. 323, 325. Oral testimony may be rejected when it is contrary to incontrovertible physical facts unequivocally established by photographic evidence,[5] but we are satisfied that this case does not fall in that category.

1. Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 568; Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 643, 148 S.W.2d 481, 485; Young v. Missouri-Kansas-Texas R. Co., Mo., 100 S.W.2d 929, 934; Bloecher v. Duerbeck, 338 Mo. 535, 547, 92 S.W.2d 681, 685(2); Hardin v. Illinois Central R. Co., 334 Mo. 1169, 1180, 70 S.W.2d 1075, 1079(4), certiorari denied 293 U.S. 574, 55 S.Ct. 86, 79 L. Ed. 672; Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 749(11). See also Garrison v. Ryno, Mo., 328 S.W.2d 557, 560–561(1); Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131, 135; Chiodini v. Terminal R. Ass'n of St. Louis, Mo. App., 287 S.W.2d 357, 362(7).

2. Davis v. Illinois Terminal R. Co., Mo., 307 S.W.2d 395; Weisbrod v. Mueller, Mo.App., 285 S.W. 542, 543(2); Staples v. Spence, 179 Va. 359, 19 S.E.2d 69, 71 (6, 7), 140 A.L.R. 527; Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 9C, § 6361, p. 630.

3. Burris v. Kansas City Public Service Co., supra, 226 S.W.2d loc. cit. 748, 749 (6, 7, 11, 12); Chiodini v. Terminal R. Ass'n of St. Louis, supra, 287 S.W.2d loc. cit. 362(7, 8); National Linen Supply Co.

v. Snowden, 288 Ky. 374, 156 S.W.2d 186, 189(1–3); Kennedy v. Southern Pennsylvania Traction Co., 333 Pa. 406, 3 A.2d 395, 397(1, 2).

4. Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 9C, § 6362, p. 634; Id., § 6353, loc. cit. 583; Scott on Photographic Evidence, § 607, p. 496; Bretall v. Missouri Pac. R. Co., Mo.App., 239 S.W. 597, 599(4, 5); Davidson v. St. Louis & S. F. R. Co., 164 Mo.App. 701, 713, 148 S.W. 406, 409(4); Gulf, Mobile & Ohio R. Co. v. Williamson, 8 Cir., 191 F.2d 887, 892. See also Baustian v. Young, 152 Mo. 317, 53 S.W. 921, 922; Fitzgerald v. Schaefer, Mo.App., 216 S.W. 2d 939, 942(7); Cunningham v. Kansas City, 225 Mo.App. 1063, 38 S.W.2d 734, 735(4).

5. Lohmann v. Wabash R. Co., 364 Mo. 910, 919, 269 S.W.2d 885, 891; Brett v. Philadelphia Transp. Co., 154 Pa.Super. 429, 36 A.2d 230; Young v. Gill, 103 Pa. Super. 467, 157 A. 348; Hartley v. A. I. Rodd Lumber Co., 282 Mich. 652, 276 N.W. 712, 715; Phelps v. Wisconsin Telephone Co., 244 Wis. 57, 11 N.W.2d 667, 670; Scott on Photographic Evidence, § 607, loc. cit. 498.

■ ·Defendants' next point is that, in any event, a verdict should have been directed for defendant Fred, the driver of the stalled truck, because (a) "he had no duty to warn plaintiff Nellie Phillips, defendant Roy Stockman, or anyone else of the presence of the stalled truck" and (b) moreover any such failure to warn could not have been a proximate cause of the accident. Before entering upon a discussion of this point, it may be well to remind ourselves that, in determining the submissibility of the case, we must consider the evidence in the light most favorable to plaintiffs, must accord to them the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendants' evidence except insofar as it may aid plaintiffs. Daniels v. Smith, Mo., 323 S.W.2d 705, 706(2); LaPlant v. E. I. DuPont de Nemours and Co., Mo. App., 346 S.W.2d 231, 234(1); Hildreth v. Key, Mo.App., 341 S.W.2d 601, 604(2).

Since the stalled truck came to rest in clear weather, during daylight hours, on a long, level, straight stretch of dry road, without fault on the part of defendant Fred, with the right side of the truck as near the right-hand side of Route D as was then and there practicable, and with more than sixteen feet of the blacktop roadway unobstructed, we are of the opinion that a duty to warn did not arise *immediately, simply because a substantial portion of the truck remained on the paved roadway;* and, as we understand the argument of plaintiffs' counsel, they do not so contend. But, we may not resolve the issue as to defendant Fred's duty to warn vel non without taking into account another unique but important circumstance, towit, the then position of the setting sun and its then effect upon the

vision of westbound drivers on Route D. As heretofore indicated, the degree or extent to which individual drivers were affected by the sun varied. The testimony of two of the four westbound drivers who appeared as witnesses reflected a substantial degree of temporary visual impairment and limitation by reason of the setting sun, while the testimony of the other two of those westbound drivers reflected no material degree of such impairment and limitation. *Defendant Roy's statements* were: "At that time of the year and at that time of the day, the sun is right in your eyes * * *." "The sun was bothering me and —although I had a blind (visor) down * * * at that time of year it's pretty rough up that blacktop." *Witness Taylor* said that "I.could see the road plain" but, with the sun in his eyes, he "couldn't see this (stalled) truck—just a blind spot in there" until he was within ten feet of the truck. *Defendant Fred* "never noticed it (the setting sun) too much, due to the fact that we have a sun visor on the truck"; and, on cross-examination, *Fred specifically denied knowledge of any blinding effect upon westbound drivers at that time of day. Plaintiff Nellie* said that, wearing sunglasses and with the sun visor down, she saw the stalled truck "quite a ways down the road."

■ Of course, motorists whose vision is materially impaired or limited have a duty to exercise care commensurate with the situation then existing [Duffy v. Cortesi, 2 Ill.2d 511, 119 N.E.2d 241, 245; Templar v. Tongate, 71 Wyo. 148, 255 P.2d 223, 229]; and, those who proceed, though their vision be blinded or substantially obscured by sunlight, hazard the risk of being branded as negligent, oftentimes as a matter of law.[6] But, careless and reckless drivers

---

6. Scott v. Missouri Pac. R. Co., 333 Mo. 374, 383, 62 S.W.2d 834, 837; Duffy v. Cortesi, 2 Ill.2d 511, 119 N.E.2d 241, 246 (11); Paquin v. St. Johnsbury Trucking Co., 116 Vt. 466, 78 A.2d 683, 685(2), 80 A.2d 669, 30 N.C.C.A.(N.S.) 113; Block v. Peterson, 284 Mich. 88, 278 N.W. 774, 776(1); Dinkins v. Jackson Brewing Co., La.App., 57 So.2d 52, 54(1);

Ulrikson v. Chicago, M., St. P. & P. Ry. Co., 64 S.D. 476, 268 N.W. 369; Havens v. Loebel, 103 Cal.App. 209, 284 P. 676; Brown v. Atlanta Gas Light Co., 96 Ga. App. 771, 101 S.E.2d 603; Missouri Pac. R. Co. v. Binkley, 208 Ark. 933, 188 S.W.2d 291; Ball v. Sears, Roebuck & Co., 5 Cir., 223 F.2d 695. See also Norby v. Klukow, 249 Minn. 173, 81 N.W.2d

are no novelty on our highways; and, perhaps in appropriate recognition that in some degree and in certain respects we are or should be our "brother's keeper" [Genesis 4:9], the law requires that the operator of a motor vehicle, in charting his course of conduct with respect to a stalled or stopped vehicle, reasonably should consider the probability of injury, not only from careful drivers of other vehicles but also from those who may be guilty of negligence short of that so "extraordinary" as not to be reasonably foreseeable.[7] In this respect, foreseeability is as relevant in determination of duty as in consideration of proximate cause, for "(m)ost duties, imposed by the law of torts, arise out of circumstances and are based on 'foreseeability' or reasonable anticipation that harm or injury is a likely result of acts or omissions."[8]

Although not a vehicle under the jurisdiction of the Missouri Public Service Commission, the stalled truck was equipped, as defendant Roy (the owner) said, with "burning flares for night" and "red flags for days, for emergency, hauling machinery or equipment or something like that." Defendant Fred thought that there were no flares on the stalled truck at the time of accident, but he readily conceded that the truck carried red flags, to which he referred as "danger flags" which "we generally use * for pulling equipment, wide equipment, * * * or if we ever need them for anything." When asked why he "didn't get them out this day," Fred said, "we didn't

have time." The record contains no estimate of the elapsed time from the stalling of the truck to the moment of impact, but it will be remembered that defendant Roy left the farm, not many miles distant, some ten to fifteen minutes after defendant Fred and Francis had left. That, when the truck stalled, defendant Fred was not alone but was accompanied by his brother, Francis, is mentioned here as a factor which, in several instances,[9] has been regarded as of some significance in determining whether the operator of a stalled vehicle reasonably could and should have warned approaching traffic.

■ With all of the foregoing in mind, we are of the opinion that, on the record before us, the triers of the facts might have found that, when the stalled truck came to rest, defendant Fred knew, or in the exercise of the highest degree of care could and should have known (i. e., that Fred then had knowledge, actual or constructive), that the truck partially obstructed the north lane of Route D at a time when and a place where the vision of some approaching westbound drivers probably would be materially affected and severely limited by the setting sun; that it then might have been reasonably foreseeable to Fred that such drivers nevertheless would proceed forward and that some accident and injury might result, if adequate warning were not given to westbound motorists; and that, in the exercise of the highest degree of care, Fred could and should have given such warning

776, 778–779(1); Templar v. Tongate, 71 Wyo. 148, 255 P.2d 223, 228–232; Meads v. Deener, 128 Cal.App. 328, 17 P. 2d 198; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574.

7. Dickerson v. St. Louis Public Service Co., 365 Mo. 738 (banc), 286 S.W.2d 820, 825; Champieux v. Miller, Mo., 255 S.W. 2d 794, 797; Leek v. Dillard, Mo.App., 304 S.W.2d 60, 66; North American Van Lines v. Brown, 8 Cir., 248 F.2d 905, 913 (3). See also Jess v. McNamer, 42 Wash. 2d 466, 255 P.2d 902, 905.

8. Hull v. Gillioz, 344 Mo. 1227, 1236, 130 S.W.2d 623, 628(5); Emery v. Thompson;

347 Mo. 494, 498, 148 S.W.2d 479, 480 (3); LaPlant v. E. I. DuPont de Nemours and Co., Mo.App., 346 S.W.2d 231, 239; Street v. W. E. Callahan Const. Co., Mo.App., 147 S.W.2d 153, 155(3). See also Taylor v. Hitt, Mo.App., 342 S.W.2d 489, 494(7).

9. Shefts Supply Co. v. Purkapile, 169 Okl. 157, 36 P.2d 275, 276; Seibert v. Goldstein, 99 N.J.L. 200, 122 A. 821, 822; Ponder v. National Convoy & Trucking Co., 206 N.C. 266, 173 S.E. 336, 337; Goodwin v. Theriot, La.App., 165 So. 342, 343.

but negligently failed to do so. But, while such findings *would have been permitted* by the evidence, we think that they *would not have been compelled,* but that reasonable men well might have differed as to whether or not a duty to warn then was imposed upon defendant Fred.

In support of their contention that Fred had no duty to warn, defendants cite only one case [Eastman v. Brackman, Mo. (banc), 347 S.W.2d 126], which we have examined carefully. Eschewing the temptation to detail and discuss the factual differences between the Eastman case and this one, suffice it to say that we regard them as clearly so material and distinguishing that the carefully-considered opinion in the Eastman case neither compels nor justifies a like conclusion here. In accordance with the trite commonplace that every case must be decided upon its own facts, we have dissected and analyzed the record, have undertaken to apply basic principles, and have come to the considered opinion that a submissible case was made on the issue as to defendant Fred's alleged duty to warn.[10]

However, defendants argue that "there is not substantial evidence that

if the appropriate warning signal (of whatever nature or kind) had been made, defendant Roy Stockman would have been able to see the same, understand its significance, and thereafter control and manage his truck in such manner as to avoid collision with the left rear end of the Phillips automobile." Causal connection need not be established by direct and positive evidence but may be shown by proof of facts and circumstances from which such connection reasonably may be inferred;[11] and "(t)he facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions as common sense dictates deduced therefrom." Anderson v. Asphalt Distributing Co., Mo., 55 S. W.2d 688, 693(7), 86 A.L.R. 1033, 1043. The usual test as to causal connection between negligence and injury, to which our Supreme Court long has been committed, is whether the facts show that, absent the negligent act or conduct, the injury would not have occurred;[12] and, it is said that, if there be causal connection between negligence and injury, proximate cause usually is for the jury. Boese v. Love, Mo., 300 S.W.2d 453, 458(5); Cox v. Wrinkle, Mo., 267 S.W.2d 648, 654(9); La Tour v. Pevely Dairy Co., Mo.App., 349 S.W.2d 436, 442.

10. No case closely analogous on the facts has been cited or found, but the interested may consult the following, in each of which plaintiff relied upon breach of an alleged duty to warn of an obstructed roadway *during the daytime.* For cases *recognizing* such duty to warn, see Menzies v. Pearson, 44 Wash.2d 252, 266 P. 2d 1038 (recovery by plaintiff blinded by setting sun); Brown v. Atlanta Gas Light Co., 96 Ga.App. 771, 101 S.E.2d 603, 608 (plaintiff, blinded by sunlight, contributorily negligent as matter of law); Schroeder v. Chapman, 4 Wis.2d 285, 90 N.W.2d 579; Ponder v. National Convoy & Trucking Co., 206 N.C. 266, 173 S.E. 336; Plummer v. McHale, 15 Misc.2d 35, 179 N.Y.S.2d 759; Toenges v. Schleihauf, 368 Pa. 247, 82 A.2d 15 (warning required by statute but plaintiff, blinded by sunlight, contributorily negligent as matter of law); Jess v. McNamer, 42 Wash.2d 466, 255 P.2d 902 (warning required by statute); Mitchell v. Rogers, 37 Wash.2d 630, 225 P.2d 1074 (warn-

ing required by statute); Shelton v. Lowell, 196 Ore. 430, 249 P.2d 958 (warning required by statute). For cases *denying* such duty under particular circumstances thereof, see Martin v. Smith, 103 Cal.App.2d 894, 230 P.2d 679; Morton v. Mooney, 97 Mont. 1, 33 P.2d 262.

11. State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 119, 28 S.W.2d 97, 102 (6); Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 154(5); Johnessee v. Central States Oil Co., Mo. App., 200 S.W.2d 383, 388(1); Long v. F. W. Woolworth Co., 232 Mo.App. 417, 422–423, 109 S.W.2d 85, 88(3).

12. Votrain v. Illinois Terminal R. Co., Mo. (banc), 268 S.W.2d 838, 843(4); Wood v. St. Louis Public Service Co., 362 Mo. 1103, 1109, 246 S.W.2d 807, 811(4); Rose v. Thompson, 346 Mo. 395, 402, 141 S.W.2d 824, 828(4); Kimberling v. Wabash Ry. Co., 337 Mo. 702, 714, 85 S.W. 2d 736, 741.

In the American Law Institute's definition of legal or proximate cause, approved by the Supreme Court in Giles v. Moundridge Milling Co., 351 Mo. 568, 577, 173 S. W.2d 745, 750, and followed by us in Hildreth v. Key, supra, 341 S.W.2d loc. cit. 607(13), we are told that "(t)he actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm" [2 Restatement, Torts, § 431, p. 1159], with the same authorities advising us that the word "substantial," as used in this connection, denotes "the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." Foreseeability is essential to a finding of proximate cause, in the sense and to the extent that *some* injury as a result of the negligent act or omission must have been reasonably foreseeable [Dickerson v. St. Louis Public Service Co., 365 Mo. 738 (banc), 286 S.W.2d 820, 824]; but, as we already have concluded in our discussion of defendant Fred's duty to warn, the evidence *would have permitted* a finding that Fred reasonably might have foreseen that *some* accident and injury might result, if adequate warning were not given to westbound motorists. The question is not whether the particular injury under consideration should have been anticipated, but whether, after the occurrence, such injury then appeared to have been the reasonable and probable consequence of the negligent act or omission.[13] And, it is immaterial that the precise manner in which the injury occurred was neither foreseen nor foreseeable.[14]

In considering defendants' contention that there was no showing that, even if an "appropriate warning signal" had been given, defendant Roy "would have been able to see the same" and to "understand its significance," we recall the testimony of witness Taylor that, although he "couldn't see this (stalled) truck—just a blind spot in there" until he was within ten feet of the truck, "*I could see the road plain*," and we recollect defendant Roy's assurance that, notwithstanding the fact that "the sun was bothering" him, he "*could * clearly see the Phillips automobile ahead*" as he *followed it at a distance of about 150 feet*. As is usually true where a failure to warn is relied upon, no one could know of a certainty precisely what would have happened if defendant Fred had placed red flags (then available to him) at appropriate distances east of the stalled truck. Cf. Champieux v. Miller, Mo., 255 S.W.2d 794, 797. However, if the triers of the facts found that defendant Fred had a duty to warn, we think that they also reasonably *might have found* that, if red flags (to which Fred referred as "danger flags") had been placed at appropriate distances east of the stalled truck, either in the center of the partially-obstructed traffic lane (as would have been required by Rule 58g of General Order No. 33–C issued by the Missouri Public Service Commission, if the stalled truck had been subject to PSC jurisdiction) or on the north shoulder of Route D near the edge of

13. Boese v. Love, Mo., 300 S.W.2d 453, 459; Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78(9); Gray v. Kurn, 345 Mo. 1027, 1043, 137 S.W. 2d 558, 567(12); La Tour v. Pevely Dairy Co., Mo.App., 349 S.W.2d 436, 442; Feldotto v. St. Louis Public Service Co., Mo.App., 285 S.W.2d 30, 32(5); Bowman v. Moore, 237 Mo.App. 1163, 1172–1173, 167 S.W.2d 675, 680(7).

14. Mrazek v. Terminal R. R. Ass'n of St. Louis, 341 Mo. 1054, 1061, 111 S.W.2d 26, 29–30(6, 7); State ex rel. Emery, Bird, Thayer Dry Goods Co. v. Shain, 348 Mo. 650, 654, 154 S.W.2d 775, 777 (5); Wilson v. White, Mo.App., 272 S.W. 2d 1, 5; 2 Restatement, Torts, § 435, p. 1173.

the blacktop, such flags would have been visible to and seen by defendant Roy as he approached them; that he then would have understood that those flags (universally used for that purpose) signified danger ahead and, so understanding, would have reduced the speed of his westbound pickup *sooner than he did*; and that, in such event, the pickup (said by *defendants* to have been moving "very slow" or "about ten miles an hour" at the time of its admitted collision with the Phillips automobile) would not have run into the left rear portion of the Phillips automobile and thus the accident and Harold's resulting death would not have occurred. Whether a negligent act or omission is a proximate cause of an accident and injury is, in each instance, to be determined and resolved upon the facts of that situation [Dickerson v. St. Louis Public Service Co., supra, 286 S.W. 2d loc. cit. 824(2)]; and, under the particular and peculiar circumstances reflected by the record before us, we are persuaded that a submissible case was made on the issue as to proximate cause—a conclusion which, although reached on the facts of this case, we believe to be consonant with the holdings in this jurisdiction.[15] In our view of them, all of the cases [16] cited by defendants on this point are quickly and easily distinguishable on their facts, and none of them militate against the conclusion reached here.

Plaintiffs' instruction P1 directed a verdict against defendant Fred upon findings (a) that he "stopped his truck so that a part of same was on the traveled portion of the highway," (b) "that said defendant failed to exercise the highest degree of care in that he negligently and carelessly failed to give any warning signals that his truck was so stopped on said highway," (c) that the Phillips automobile was being followed by the pickup driven by defendant Roy, (d) that plaintiff Nellie, "as she approached the stalled truck, gradually slowed down but her car was struck in the rear" by the pickup, causing the Phillips automobile to strike the stalled truck, and (e) that "the negligence of Fred A. Stockman, if you find he was negligent in failing to give defendant Roy Stockman any warning, directly caused or contributed to cause the death of Harold Dean Phillips." Of the several complaints leveled at this instruction, we first address ourselves to those which we believe to be meritorious.

One such complaint is that this instruction "does not hypothesize the facts and circumstances essential and necessary to generate defendant Fred Stockman's duty to warn and to support a finding of causation" between Fred's negligence, if so, and the accident. Under some circumstances (e. g., in dense fog, heavy rain, or blinding snow), the hazard or peril created by the stalling of a truck with any portion thereof on the paved roadway might be so flagrant and obvious as to charge the driver of the stalled vehicle *with immediate knowledge thereof*. But the stalled truck in this case came to rest in what we colloquially refer to as "broad daylight," with no visually-limiting atmospheric condition at that time, on a long, level, straight stretch of dry road, with the right side of the truck as close to the right-hand side of Route D as was then and there practicable, and with more than sixteen feet of the blacktop roadway unobstructed. If the stalling of the truck then created a hazard or peril, it was because of the then position of the setting sun and its then effect up-

15. Champieux v. Miller, supra, 255 S.W. 2d loc. cit. 797; Johnson v. Lee Way Motor Freight, Mo., 261 S.W.2d 95, 99–100(8); Cox v. Wrinkle, Mo., 267 S.W.2d 648, 654(10); Dickerson v. St. Louis Public Service Co., supra, 286 S.W.2d loc. cit. 824–826; Boese v. Love, supra, 300 S.W.2d loc. cit. 458–459(4–6); Leek v. Dillard, supra, 304 S.W.2d loc. cit. 65–66.

16. Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240; Vietmeier v. Voss, Mo., 246 S.W.2d 785; Smith v. Mabrey, 348 Mo. 644, 154 S.W.2d 770; Rose v. Thompson, supra, 141 S.W.2d loc. cit. 828–829; Bowers v. Columbia Terminals Co., Mo. App., 213 S.W.2d 663.

on the vision of some westbound drivers. With the testimony of defendant Fred and plaintiff Nellie reflecting no material degree of visual limitation by reason of the setting sun, we are of the opinion that reasonable minds might well differ as to whether the hazard or peril created by the position of the stalled truck (but only in combination with and by reason of the then position of the setting sun and its then effect upon the vision of some westbound drivers) was so notorious and manifest as to charge Fred with immediate knowledge thereof. This is particularly true in view of the common knowledge of all motorists (of which even judges should not profess ignorance) that innumerable interacting factors, some continually in the process of change and others subject to change, enter into and bear on the effect of the setting sun upon the vision of a motorist driving toward it, e. g., to mention a few such factors, the precise position of the sun at any given moment, the precise position of the motor vehicle at the same moment, the curvature and angle of installation of the windshield of the vehicle, the size and position of the sun visor in front of the driver, the eye level of the driver as related to the visor, the individual characteristics (visual and otherwise) of the driver, etc.

"Negligence, of course, depends upon surrounding circumstances as well as the particular conduct involved, because an act or omission which would clearly be negligent in some circumstances might not be negligent in other circumstances and surroundings." Knight v. Richey, 363 Mo. 293, 303, 250 S.W.2d 972, 978. So, what specific findings of evidentiary facts are essential in a verdict-directing instruction must be determined upon the facts and circumstances of the case in which such instruction is offered.[17] In the particular and peculiar circumstances of the case before us, we are convinced that Fred's knowledge, actual or constructive, of the hazard or peril created by the stalling of the truck not only was an essential prerequisite to a finding that he was negligent in failing to warn westbound drivers but also was a disputed factual issue as to which different inferences might be drawn and different conclusions might be reached by reasonable men.

The purpose of a verdict-directing instruction is to make clear to the jurors the essential factual issues which they must decide [Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500; Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W. 2d 109, 116(16); Hampton v. Raines, Mo. App., 334 S.W.2d 372, 378(10)]; and an instruction of such character must require the finding of all facts disputed or not conceded, which are necessary to support the directed verdict, and may neither ignore nor assume any such fact.[18] As has been observed wisely and appropriately, "[a] jury can only understand how to reach a correct general verdict by being told what facts must be found to reach each possible result under the evidence." Long v. Mild, 347 Mo. 1002, 1013, 149 S.W.2d 853, 860; Lewis v. Zagata, 350 Mo. 446, 455, 166 S. W.2d 541, 547; Thaller v. Skinner & Kennedy Co., Mo.App., 339 S.W.2d 487, 489. But, under instruction P1, the *only* prerequisite to a finding that defendant Fred had "failed to exercise the highest degree

17. Creech v. Riss & Co., Mo., 285 S.W. 2d 554, 562(8); Levin v. Caldwell, Mo., 285 S.W.2d 655, 660; Knight v. Richey, 363 Mo. 293, 303, 250 S.W.2d 972, 978; Hampton v. Raines, Mo.App., 334 S.W.2d 372, 378(9).

18. Kimmich v. Berry, Mo., 319 S.W.2d 546; Fitzpatrick v. St. Louis-San Francisco R. Co., Mo., 300 S.W.2d 490, 497–499(10, 12); Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W.2d 109, 116(16, 17); Tucker v. Taksel, Mo.App., 345 S.W.2d 385, 388; Hampton v. Raines, supra, 334 S.W.2d loc. cit. 378(6, 7); Hicks v. De Luxe Cab Co., Mo.App., 189 S.W.2d 152, 156(8–10). See also Littlefield v. Laughlin, Mo., 327 S.W.2d 863, 869–870; Terrell v. Missouri-Kansas-Texas R. R. Co., Mo., 303 S.W.2d 641, 646(2); Ferguson v. Betterton, 364 Mo. 997, 1004, 270 S.W. 2d 756, 761(4).

of care in that he negligently and carelessly failed to give any warning signals that his truck was so stopped on said highway" was the hypothesized and *admitted* fact that he had "stopped his truck so that a part of same was on the traveled portion of the highway." And, with nothing other than instruction P1 to guide them on this issue, the jurors were free to conclude that the stalling of the truck with a portion thereof on the traveled roadway *immediately* raised a duty to warn, and were licensed to find Fred negligent in failing to place red flags or to station a flagman behind the stalled truck immediately after it stopped (or at any time thereafter), regardless of whether Fred then had knowledge, either actual or constructive, that the position of the stalled truck created a hazard or peril by reason of the then position of the setting sun and its then effect upon the vision of some westbound drivers. For failure to hypothesize and require a finding to the effect that defendant Fred knew, or in the exercise of the highest degree of care could and should have known, that the stalled truck had come to rest at a time when and a place where the vision of some westbound drivers probably would be materially affected and severely limited by the setting sun (if so) and that, by reason thereof, some accident and injury might result if adequate warning were not given to westbound drivers on Route D, instruction P1 was fatally deficient and prejudicially erroneous. See again Hampton v. Raines, supra, 334 S.W.2d loc. cit. 375 [transfer denied 6/13/60, No. 48294 Mo. Sup.]. And, consult Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102, 107.

If instruction P1 was intended (as it appears) to encompass and permit recovery for Fred's negligence (if so) in failing to warn defendant Roy *after* Fred had *actual* knowledge of the hazard to westbound drivers (i. e., *after* Taylor had told Fred, while the two of them were standing on the south side of the Taylor automobile, that Taylor attributed his sideswipe of the stalled truck to the blinding effect of the sun), this instruction also should have included and required a finding that thereafter, in the exercise of the highest degree of care, Fred could have given Roy a warning of such character and at such time that Roy, in the exercise of a like degree of care, could have acted thereupon and avoided collision with the Phillips automobile. See Branstetter v. Gerdeman, 364 Mo. 1230, 1240, 274 S.W.2d 240, 246; Johnson v. Missouri-Kansas-Texas R. Co., Mo., 334 S.W.2d 41, 47. For, if Taylor's then disclosure to Fred were relied upon as *initially* raising a duty to warn, obviously the time in which and the means with which any warning *thereafter* might have been attempted would have been most limited, and Fred's ability, in such time and with such means, to have communicated to defendant Roy an *effective* warning that *the stalled truck was partially on the traveled roadway* (that being the warning Fred should have given, so plaintiffs charged) would have been extremely doubtful.

Instruction P1 is also vulnerable to defendants' complaint that "in effect the instruction tells the jury that defendant Fred Stockman's failure to give warning signals was in fact negligence." The negligence, upon which a verdict against defendant Fred was directed, was "that said defendant failed to exercise the highest degree of care in that he negligently and carelessly failed to give any warning signals that his truck was so stopped on said highway." In effect, the instruction thus *assumed* that Fred's failure to warn constituted negligence and carelessness and required a finding only that such assumed negligence and carelessness in failure to warn constituted a failure to exercise the highest degree of care. After appropriate factual hypothesization (as hereinbefore discussed), the jury should have been permitted and required to find whether Fred's failure to warn constituted negligence. In this connection, see Mahaney v. Kansas City, Clay County & St. Joseph Auto Transit Co., 329 Mo. 793, 803, 46 S.W.2d

817, 821(7); Piehler v. Kansas City Public Service Co., 360 Mo. 12, 18, 226 S.W.2d 681, 684; Payne v. Stott, Mo.App., 181 S.W.2d 161, 164(11); Anderson v. Welty, Mo.App., 334 S.W.2d 132, 140.

■ Defendants further assert that instruction P1 erroneously imposed upon defendant Fred the duty to exercise the *highest* degree of care, which is the statutory duty of "[e]very person operating a motor vehicle on the highways of this state" [V.A.M.S. § 304.010], whereas (so defendants contend) "at the time of the casualty defendant Fred Stockman was not driving and operating a motor vehicle and had the duty to exercise only *ordinary* care." Our courts have held that "operating a motor vehicle on the highways" encompasses "all acts necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation, including * * * the act of stopping en route for purposes reasonably associated with transit * * *." Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 130(9); Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 516(9); Karnes v. Ace Cab Co., Mo.App., 287 S.W.2d 378, 380(2). In Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, where (according to plaintiff's evidence) defendant's truck had stopped on the paved roadway without lights and the driver had been working under the raised hood, it was said [loc. cit. 154(7)] that: "In a legal sense the truck was being operated by the defendant whether it was stationary or moving. The word 'operation' is not limited to the movement of the car alone, but includes such stops as motor vehicles ordinarily make in the course of their operation." And, the holding in Stewart v. Jeffries, 224 Mo.App. 1050, 34 S.W.2d 560, as epitomized in headnote 2, was that "motorist stopped on highway to repair automobile was 'operating' automobile within statute requiring highest degree of care." We conclude that instruction P1 was not erroneous in exact-ing of defendant Fred the highest degree of care.

■ Two instructions directed a verdict against defendant Roy. By instruction P4, the jury was told that "under the evidence and the law the defendant Fred A. Stockman was the agent of the defendant Roy V. Stockman at the time and place of the accident" and "therefore if you find against the defendant Fred A. Stockman and in favor of plaintiffs under instruction P1 you will also find against the defendant Roy V. Stockman and in favor of plaintiffs." Instruction P2 (described by plaintiffs' counsel as "the usual rear end instruction") directed a verdict against Roy upon a finding that he "failed to use the highest degree of care in that he negligently and carelessly caused or permitted his motor vehicle to strike the rear end of the automobile in which said Harold Dean Phillips was riding." Since we cannot know whether the jury returned a verdict against defendant Roy (a) under instruction P2 or (b) pursuant to the direction of instruction P4 because the jury had found against defendant Fred under instruction P1 (the only verdict-directing instruction as to Fred), the prejudicial error in instruction P1 necessitates reversal and remand for a new trial as to both defendants regardless of the validity of the legal assaults mounted by defendants against the other given instructions. Accordingly, we do not further extend this opinion, already inordinately long and tedious, by particularized discussion of defendants' several complaints as to instructions P2, P3 and P4. However, we observe that, on its face, instruction P2 has one vice in common with instruction P1, i. e., in directing a verdict against defendant Roy on the finding hereinbefore quoted, instruction P2 erroneously *assumed* that Roy's conduct in permitting the pickup to strike the Phillips automobile constituted negligence and carelessness, rather than permitting and requiring the jury to find whether such conduct constituted negligence. See the Ma-

haney, Piehler, Payne and Anderson cases, supra. Other objections to the instructions may be met and satisfied upon retrial.

The judgment of the circuit court is set aside and for naught held, and the cause is remanded for retrial as to both defendants.

McDOWELL and RUARK, JJ., concur.